# KELSOE vs. THE STATE.

[INDICTMENT FOR MURDER.]

1. *Criminal act, slight evidence of motive for doing ; should not be excluded.*
   In a criminal case, slight evidence to show a motive for doing the act,
   is not to be excluded, but should be left to the consideration of the
   jury. For example, in a case of murder, it may be shown that a rela-
   tive and friend of the accused had, on two successive days, difficulties
   with deceased, which *originated* about the accused ; that in the first of
   said difficulties accused was present, *and sided* with his relative and
   friend, and in the second his relative and friend was killed by de-
   ceased.

2. *Conversations and oral declarations; evidence as to ; for what reason
   should not be excluded.*—Conversations and oral declarations are to be
   received at all times with great caution, but when the witness hears all
   the conversation, although he may not remember all of it, his evidence
   for that reason is not to be altogether excluded, but it should be per-
   mitted to go to the jury to determine its credibility and effect.

3. *Witness ; judgment alone renders incompetent* —It is the judgment, *and
   that only,* that renders a party infamous, and incompetent to testify as
   a witness.

4. *Admissions of defendant against co-defendant ; when are competent evi-
   dence.*—Where two parties are tried together, on a joint indictment,
   the admissions of one of the parties, not made in the presence of the
   other, are only admissible as evidence against the party making them.
   If they are of such a character that what tends to prove the guilt of
   the party, by whom they were made, can not be stated without impli-
   cating the other, they may, notwithstanding, be received, but the
   court must, at the time they are received, instruct the jury that they
   are evidence only against the party by whom they were made.

5. *Flight of accused ; charge as to ; what erroneous.*—The following charge
   in a criminal case should be refused, to-wit : " If the facts proved ren-
   der it doubtful whether the flight of the accused was from a conscious-
   ness of guilt, then the jury ought not to regard it as an evidence of
   guilt."

APPEAL from the Circuit Court of Butler.

Tried before Hon. P. O. HARPER.

Appellant, Kelsoe, James Myers and Randall May were
jointly indicted for the murder of William C. Otts. The
venue as to Myers having been changed to Conecuh

county, Kelsoe and May were tried together. May was acquitted, and appellant, Kelsoe, found guilty of murder in the first degree, and sentenced to the penitentiary for life.

On the trial, a lengthy bill of exceptions was reserved, which shows numerous exceptions to the ruling of the court below, but does not state that it contains all the evidence.

It appears from the bill of exceptions, that the State introduced testimony tending to show that Wm. C. Otts was killed in the county of Butler, on the 3d day of September, 1869, by persons who shot with guns from behind a log near a road, along which said Otts was riding. The facts thus proven tended to show that the persons who killed Otts had been lying in wait behind said log for some days, and had left signs by tramping, and otherwise; that two persons had participated in the killing. The testimony showed that Otts was shot in the head and in the thigh, one shot, supposed to be buck-shot, in the head, and one in the thigh, from which he died, and that his horse, on which he was riding, was found dead fifteen or twenty yards from his body; the horse having seven or eight shot in his body.

The State introduced one Bazor as a witness, who testified that John Myers was a nephew by marriage of defendant, Kelsoe. The State then asked this witness whether, in March, 1869, W. C. Otts was not attacked by John Myers, at Garland, in said county, the witness having previously testified that defendant, Kelsoe, was present at this rencounter, *siding* with Myers. To this question defendant, Kelsoe, objected, but his objection was overruled, and he excepted to this ruling of the court, and the witness was permitted to state that W. C. Otts was attacked on one Sunday evening, and the defendant, Kelsoe, objected and excepted to this action of the court. It was proven in this connection that defendant, Kelsoe, was present on the occasion, but he had no fight or difficulty with Otts, though the evidence showed the fight originated about Kelsoe. The State offered to prove by this same

witness, that about the time Myers attacked Otts, Kelsoe
came up with a stick in his hand. To this defendant, Kel-
soe, objected, but his objection was overruled, and the wit-
ness allowed so to state, and to this action of the court de-
fendant, Kelsoe, excepted.

The witness was asked what Myers said to Otts. De-
fendant, Kelsoe, objected, but this objection was overruled,
the court saying that until it heard what the witness said,
it could not say whether the declaration of Myers would
be legal or not, and defendant, Kelsoe, objected to the
court permitting the witness to state these declarations *in
the presence of the jury*, and excepted to this action of the
court. The witness was then·permitted to state that My-
ers said to Otts, "You have abused me and called me a
damned coward." The court then sustained the objection,
and excluded this declaration, but Kelsoe excepted to the
court hearing the testimony and then determining after-
wards whether it should be excluded. This witness was
permitted to prove, against the objection of Kelsoe, that
on the same occasion Kelsoe presented a pistol at one An-
drew Jackson, who, during the fight and at the time, was
taking the part of said Otts, and defendant, Kelsoe, ex-
cepted to this action of the court. The State proved,
against the objection of defendant, Kelsoe, that on the
next day, Monday, at a time when defendant, Kelsoe, was
not present, John P. Myers and Willie C. Otts, the de-
ceased, had a difficulty, in which John P. Myers shot at
Otts twice, and that W. C. Otts shot at Myers three times,
and that said John P. Myers was killed in said difficulty,
which evidence the State offered solely for the purpose of
proving the death of Myers, a kinsman and friend of Kel-
soe, at his (Otts') hands, which the court admitted only for
the purpose of showing cause of enmity towards deceased
by Kelsoe. To this evidence the defendant, Kelsoe, ob-
jected, but his objection was overruled, and he excepted to
this action of the court. It was proven that said Jackson
was the friend of said Otts, and that Kelsoe was a friend
of Myers.

The State introduced as a witness one E. T. Durden, and

proposed to prove by him a conversation between the defendant, Kelsoe, and one F. M. Walker, which he said occurred during the same year Otts was killed, and before he was killed, but witness could not remember when. The witness stated that he did not remember the whole of the conversation so as to repeat it all, but could repeat the beginning and end of it, though he heard it all. Defendant, Kelsoe, thereupon objected to the witness stating any of the conversation, but his objection was overruled, and he excepted to this action of the court. The witness Durden was then permitted to state, against the objection of defendant, Kelsoe, that in the commencement of the conversation, said Walker and Kelsoe were talking about W. C. Otts, and then there was some conversation for near five minutes that the witness could not remember, and then he heard Walker ask Kelsoe, "What are you going to do about it?" and Kelsoe replied, "If I live I'll kill him, if it takes me a life-time to do it." This was all the witness could remember. The defendant, Kelsoe, objected to this evidence; but the court overruled the objection, and he excepted to this action of the court. The witness stated that he did not know of whom said Kelsoe was speaking; understood Kelsoe to be speaking of Otts, the deceased, when he said, in reply to the question of Walker above stated, that "If I live I'll kill him, if it takes me a life-time to do it"; and the defendant, Kelsoe, moved to exclude this declaration from the jury, but the court overruled his objection, and the defendant, Kelsoe, excepted."

Amongst others offered by the State as witnesses was one John P. Moseley. When he was offered as a witness the defendant, Kelsoe, objected to him being sworn as a witness, and offered the verdict of a jury of the present term finding Moseley guilty of horse-stealing, but no judgment had then been rendered thereon or sentence passed by the court. The court overruled the objection made to this witness, and permitted him to be sworn and testify as a witness against defendant, and the defendant, Kelsoe, excepted.

Moseley then testified, against the objection of both the

Kelsoe v. The State.

defendants, each making his objection separately, that defendant, Randall May, (who was in jail with witness Moseley,) said to witness, "What is necessary to enable me to turn State's evidence?" Witness replied, "By telling all you know, and, if it is sufficient, you can turn State's evidence." To this question and answer each defendant separately objected, separately to the question and answer, and to both question and answer, but the court overruled the objection of each defendant, and admitted the evidence, as it was offered solely as against defendant May, and each defendant separately excepted to this action of the court, and the question and answer above quoted were permitted to go to the jury as evidence only against May. The witness Moseley then proceeded to state the conversation between him and said defendant, Randall May, (Kelsoe was not present at such conversation.) "Defendant, Randall May, then said, 'I am not guilty of killing Otts, and I don't know that I know enough to make me a State's witness; I am tired of staying in jail.'" To this defendant, Kelsoe, objected, but his objection was overruled for the reason that the evidence was not offered against him, and he excepted. The witness then said to Randall May, "If I could get out of jail that way, I would turn State's evidence." To this defendant, Kelsoe, objected, but his objection was overruled for the reason that the evidence was not offered against him, and he excepted. These statements were permitted to be made to the jury solely as evidence against May, against the objection of defendant, Kelsoe, and he excepted. The witness then testified further, that Randall said, "Mr. Kelsoe came to borrow my gun." Kelsoe moved to exclude this, but his objection was overruled, and the evidence admitted, as it was offered solely against defendant, May, and he excepted. "I asked Kelsoe what he wanted with my gun. He said, 'I want to go hunting.'" To this defendant, Kelsoe, objected, and moved to exclude the same as any legal evidence against him, which the court did, but admitted it as to May, and to this action of the court defendant, Kelsoe, excepted. Witness Moseley testified fur-

ther : " Kelsoe said, ' I don't know what I may hunt, but I may hunt some damned rascal.' " To this declaration of May, as proved by witness Moseley, Kelsoe objected, but his objection was overruled, and it was admitted only as evidence against May, and Kelsoe excepted to this action of the court. Witness Moseley proceeded : " Randall said, ' Mr. Kelsoe went off, I suppose, hunting. The next time I saw Mr. Kelsoe he was at the place where W. C. Otts was killed. I saw Mr. Kelsoe and George Myers sitting on a pine log blown up by the roots. They said, " Have you seen Willie Otts ?" I said, " I have seen him at Mrs. Holmes'." I then started to Garland, but after I saw them, I expected what was going to be, and I went towards home.' " It was in proof that Mrs. Holmes lived but a short distance from where Otts was killed. Kelsoe objected to these declarations of Randall May, as stated by witness Moseley, and the court admitted them only as evidence against May, and Kelsoe excepted to this action of the court. Witness Moseley further testified, in relation to said conversation, that " Randall then said, ' I went to my field ; I heard the guns fire, and I said to Zade Stinson, " There ! Willie Otts is killed." ' " To this defendant, Kelsoe, objected; and the court permitted these declarations to go to the jury only as evidence against May, and Kelsoe excepted. The court said, however, that this last declaration was only admitted as evidence against Randall May, but the defendant, Kelsoe, objected, and his objection was overruled, and he excepted. The witness Moseley said this was the whole of the conversation witness had with Randall May, defendant, in November, 1870. Thereupon, the defendant, Kelsoe, moved to exclude the whole of this conversation, as detailed by witness Moseley, from the jury, but the court overruled this objection, and the defendant, Kelsoe, excepted to this action of the court.

The same witness, Moseley, then said, " that he had another conversation in jail with Randall, in March or April, 1871." The State proposed to prove this second conversation as evidence against defendant, May ; defendant, Kelsoe, objected, but his objection was overruled, and he

excepted. The witness Moseley was permitted, against the objection of defendant, Kelsoe, to state what Randall said (the defendant, Kelsoe, not being present,) about turning State's evidence, &c., his motive therefor, and why he had not done so. To this statement of the conversation Kelsoe objected and excepted, but the court overruled the objection, and Kelsoe excepted. The statements as to how the conversation came about are not necessary to be further noticed. Witness Moseley was permitted to state said conversation, and stated that "He went on then to tell me what he knew about the case. He said : 'Mr. Moseley, if you had a son, and I knew who killed him, and wouldn't tell, you would think mighty hard of me.'" Witness said, "I would; and if you know who killed Mr. Otts' son, you had better tell it." Defendant, Kelsoe, objected to this, and the evidence was admitted only against May, and Kelsoe excepted. "Randall then said: 'I am going to, and the reason I have not done it before, I thought I had to prove what I said. Mr. Kelsoe and Mr. Myers were sitting there, and they undoubtedly must have done it.'" To this Kelsoe objected, and the court said the court would exclude it as to Kelsoe, but would admit it as to Randall May, and Kelsoe objected to said last declaration going to the jury as evidence at all, but his objection was overruled, and he excepted to this ruling of the court. The court here asked the witness Moseley, "Did you say that Randall stated to you in this conversation that Myers and Kelsoe were at the log?" To this question by the court the defendant, Kelsoe, objected, but his objection was overruled, and he excepted. The witness replied, " *He did.*" To this answer of the witness, the defendant, Kelsoe, objected, and the court admitted the evidence only against May, and Kelsoe excepted. The witness further testified, that Randall told him in this second conversation, that Myers and Kelsoe asked him if he had seen Willie Otts, and he told them he had at Mrs. Holmes' ; and to this defendant, Kelsoe, objected, but the court said it would let it go the jury as evidence, not against Kelsoe, but as against Randall, and to this action of the court defendant, Kelsoe,

excepted, and moved to exclude this last named declaration from the jury as any evidence against either defendant, but the court overruled the objection, and the defendant, Kelsoe, excepted. Witness said this was the whole of the second conversation with Randall. The defendant, Kelsoe, thereupon moved to exclude the whole as being illegal and irrelevant, but the court overruled this objection, and admitted it as evidence as against May only. Defendant, Kelsoe, excepted to this refusal.

The State asked the witness Moseley, "if he had at any time had any conversation in jail with defendant, Kelsoe, in which he voluntarily made any confessions of guilt as to this case?" The defendant, Kelsoe, objected to this question as illegal and irrelevant, but his objection was overruled, and he excepted, and the witness thereupon was permitted, against the objection of Kelsoe, to state a conversation which the witness said he had with defendant, Kelsoe, in jail, in which he confessed that he had killed Otts, which conversation witness repeated at length, and said the confession was voluntarily made by Kelsoe. To this conversation the defendant objected, but his objection was overruled, and he excepted.

The State offered to swear one Leah May as a witness. The defendants showed to the court that said witness was the wife of the defendant, Randall May, and objected to her competency as a witness in this case, but the court overruled this objection, and allowed her to give evidence against the defendant, Kelsoe, and stated that nothing she should say should be weighed by the jury against defendant, Randall May. The defendant, Kelsoe, objected to this action of the court, but his objection was overruled by the court, and he excepted. The witness then testified, that on Thursday of the same week Willie Otts was killed, (he being killed on a Friday,) defendant, Kelsoe, borrowed a shot-gun of Randall; never promised to return it at all, but did return it on Sunday morning afterwards, and after Otts had been killed. It was a small single-barrel gun. Randall got the gun from Mr. McCure. To this evidence

Kelsoe v. The State.

each defendant objected separately, but the objection was overruled, and defendant, Kelsoe, excepted.

The State then introduced evidence tending to show that about three weeks after Otts was killed Kelsoe left the State of Alabama, and did not return until he was arrested by the officers of the law in Georgia, and brought back; that his family remained in the neighborhood three-quarters of a mile of where Otts was killed; and further introduced evidence tending to show that Kelsoe left the State in consequence of being charged with the killing of Otts. There was also evidence to show that there had been unkind feelings and expression on the part of Kelsoe to Otts and his family, and that this continued from spring time, 1869, to the time of Otts' death. The evidence was conflicting as to whether or not Kelsoe had attempted to break jail since his imprisonment on the present charge.

Defendant introduced a witness who testified that he advised Kelsoe, on account of the excitement then existing, to leave until it had blown over, and that Kelsoe left soon after. The defendant asked this witness if he had heard any expressions of kindness and friendship made by the defendant, Kelsoe, towards the deceased, Otts, between the difficulty in March, 1869, proven by the State, and the time of W. C. Otts' death, and if so, to state what those expressions of kindness and friendship were. To this question the State objected, and the court sustained the objection, and refused to permit the defendant, Kelsoe, to prove that he had made such expressions of kindness and friendship between March, 1869, and before the killing of Otts, and the defendant, Kelsoe, duly excepted.

Defendants introduced as a witness, without objection by the State, James Myers, their co-defendant, who swore that he was not guilty, and knew nothing of the killing of Otts until the next day after he was killed, and that he knew no fact tending to show that either of the other defendants was guilty of the charge in the indictment. The State asked this witness, on cross-examination, after laying the proper predicate as to time, place, &c., if Kelsoe, on the occasion named, had not come to him to get him to

aid in killing Otts, &c., and if Kelsoe did not say, upon his refusal, "that witness was as big a coward as May." The witness answered that he did not.

The State introduced one Perdue, and proposed to ask him if said witness, James Myers, had not made the declarations above referred to. The defendant, Kelsoe, objected to Perdue stating that said James Myers had made such statements, but the court overruled his objection, and permitted said Perdue to prove that said James Myers had made such declarations as those enquired of, and the defendant, Kelsoe, excepted to this action of the court. The court said these declarations would be introduced solely for the purpose of contradicting the witness, Myers, and the defendant, Kelsoe, objected to the introduction of said declarations for this purpose, but his objection was overruled, and he excepted.

Defendants, in addition to the evidence heretofore spoken of, showing that John P. Moseley had been found by a jury guilty of horse-stealing, also introduced many witnesses who proved his character as an honest man and a man of truth to be very bad, and that they would not believe him on his oath. Defendants also introduced witnesses to contradict said Moseley.

The State, by way of rebuttal, also introduced evidence tending to contradict W. P. Myers, one of the defendant's witnesses, by whom he attempted to prove an alibi.

The court being required to charge the jury in writing, gave a very lengthy written charge, which, after stating the duties of the jury, their province, the rules for their examination of testimony, &c., is as follows :

"I will now speak of John P. Moseley, one of the witnesses introduced for the State. *I will remark, first, that John P. Moseley is not legally infamous. What I mean is this, that, although he may have been tried for horse-stealing, yet he is not rendered incompetent as a witness until there is a judgment of conviction. There has been no judgment of conviction against Moseley, and, therefore, I admitted him as a competent witness.* 'After he was admitted as a competent

witness, then, of course, the defendant may show him unworthy of credit, if he can."

The court then charged the jury as to the methods of impeaching a witness, and to this no exception was reserved.

The court then went on to charge the jury upon the law of circumstantial evidence, quoting at length from Greenleaf and other works on evidence, and then proceeded :

"Now, the evidence of Mr. Perdue and Dr. Peacock, in regard to conversations between Mr. Perdue and Mr. James Myers, and Dr. Peacock and Wm. P. Myers, were admitted by the court as competent, to show that these witnesses had made contradictory statements, and what they said in these conversations is not evidence against the defendants. Being admitted only for the purpose of showing contradiction, you must regard this testimony for this purpose, and this purpose alone, but I leave it to you to determine whether they made any contradictory statements, this being a matter belonging to you to determine. *T he evidence of an accomplice, says the law, is to be viewed with suspicion, unless they are supported by other witnesses or corroborating circumstances.*"

The defendant excepted to the whole charge, and especially to those portions which are italicised.

"The court also charged the jury orally, by consent of the defendant, and amongst other things said, in reference to the weight of the evidence of James Myers, (introduced as a witness for the defendant, and who was jointly indicted with the defendants Kelsoe and May,) that 'the fact that a witness is charged in the indictment creates a suspicion against the witness.' To this part of the charge defendant excepted."

"The defendant asked the court to give the following charge in writing, which charge was refused, and the defendant excepted :

"10. That the flight of a defendant, although a circumstance to be weighed by the jury as evidence against the defendant, is of weak and inconclusive character; that it may not be evidence of guilt at all, if it be shown that any

other motive for the flight than that of the sense of guilt. Flight may proceed from an unwillingness to stand a public prosecution, or from fear of the result; from an inability to explain certain false appearances, or from advice of friends to avoid public excitement, or other reasonable motive; and if from any cause it may be that the flight was produced by anything other than a sense of guilt, the flight would be no evidence of guilt; or if the facts proven render it doubtful whether the flight was from conscious guilt, the jury ought not to regard it an evidence of guilt."

The court gave the following charges at the request of the State, to each of which defendant excepted:

"1. The question for the jury to decide is, whether they believe from the evidence, beyond a reasonable doubt, that the defendants are guilty of committing the offense in this county, before the finding of the indictment. You can not, if your belief is the result of the evidence, separate your belief as men from your belief as jurors; and if as men you believe from the evidence, according to the rules of law given you in charge, that the defendants are guilty, then you are bound to convict; and you may convict one and acquit the other, if it should appear that one is guilty and the other not; you may acquit one and convict the other, or you may acquit both.

"2. When the law says you must be convinced to a moral certainty, it does not mean an absolute certainty. Nothing more is meant than that you must be convinced beyond a reasonable doubt.

"3. It does not matter to you what the theory of the counsel for the State may be, or what the theory of the counsel for the defendant may be; you are to go by the facts, and not to be governed by the theories of anybody. If, according to the rules that have heretofore been laid down, you believe either of the defendants, beyond a reasonable doubt, to be guilty, you must so find; and if the defendants, or either of them, did the killing, it does not matter whether it was with a rifle or a shot gun.

"4. Although the witness Mosely may have been successfully impeached, yet the jury are not therefore bound

to set aside and disregard his testimony, but they may still look at it in connection with the other evidence of the cause, and if they find it is corroborated in its material points by other evidence, and if they find points of coincidence between Mosely and other witnesses, which coincidences the jury believe could not have been the result of design or accident, then to such coincidences they will give such weight as they may be entitled. They may also look at the manner in which Mosely testified, the conversations which he relates, the circumstances under which he says they came up, the reasonableness or unreasonableness of the conversations themselves, the probability or improbability that Mosely could have manufactured these conversations; and if, under all the circumstances, the jury, as common sense men, believe that Mosely has told the truth, then it is the duty of the jury to act on his evidence so far as they may have no reasonable doubt of its truth. Your object is to get at the facts, come from whatever sworn witness in the cause they may.

"5. If the evidence shows that up to the time of the murder the defendant, Kelsoe, was evading arrest by the officers of the law, yet, if there is any evidence tending to show that from the date of the murder he began to conceal himself more carefully from the public than before, then the jury may look to that circumstance in deciding on the weight and effect of his subsequent flight, if the evidence shows he did subsequently flee."

The defendant makes forty-four assignments of error, to-wit: each of the matters excepted to, the charge of the court, the charges refused, and the charges given at the request of the State.

T. H. WATTS, and JOHN GAMBLE, for appellant.—The witness Bazor was permitted to detail the facts constituting the previous difficulty. The fact that there had been a difficulty was competent, but the particulars of that difficulty were not competent and legal evidence.—*Tarver v. The State*, 43 Ala. 354; *Martin and Flinn v. The State*,

38

28 Ala. 71; 26 Ala. 44. These authorities apply to all the objections made to the different parts of Bazor's testimony admitted against the objection of defendant, except the 7th assignment of error.

2. It is clear that the evidence of Bazor was merely the unproved statements and acts of third parties, made in the absence of the defendant, and these statements and acts were *res inter alios actu*, and wholly incompetent and illegal evidence against the defendant.

3. The witness Durden did not remember, and did not hear, all that was said between Walker and defendant, Kelsoe, and he supposed he was alluding to Otts. This supposition of the witness was wholly illegal. The rule is well settled, that if you undertake to prove what a witness has sworn on a former trial, the witness must be able to remember the substance of the whole, or he is not permitted to testify as to any part.—*Thorp v. The State*, 15 Ala. 749; *Davis v. The State*, 17 Ala. 354. There is no reason why this rule should not apply to a detail of a conversation. Here the witness did not pretend to remember, or even to have heard the whole conversation. The conversation lasted for five minutes, and the witness could only remember the first words and the last; he did not hear what occurred in the *interim*, and then he was permitted to give his mere inference or supposition that Kelsoe, by the last remark made, alluded to Otts, the deceased. It needs no authority to show that this supposition of the witness was wholly illegal as evidence.

4. Mosely was a convicted horse-thief, and was incompetent. At common law he was legally infamous, and therefore incompetent. The statute which once existed in this State, (§ 2302 of Code of 1853,) declaring that a conviction, except for perjury and subornation of perjury, shall not disqualify a witness, never applied to any except civil cases, and it is repealed by the act of 1867.—Revised Code, § 2704.

5. That portion of the written charge in reference to the witness Mosely was erroneous, being calculated to mislead the jury as to the weight to be given to his evidence.

It was peculiarly the province of the jury to determine what his testimony was worth. The effect of the charge was to bolster him up.

6. The portion of the written charge excepted to in reference to the witness Myers, was clearly erroneous. The oral charge in reference to the same witness was as follows: "The fact that a witness is charged in the indictment creates a suspicion against the witness." The first one quoted assumes that James Myers was an accomplice, merely because he was jointly charged in the indictment. This assumption was directly the reverse of the law. Every man is presumed to be innocent, until his guilt is proven. The finding of an indictment by a grand jury is no proof of his guilt, and therefore is no proof that he is an accomplice. The charge assumes, also, that the defendants on trial were guilty, because James Myers could not be an accomplice of the defendant unless they were guilty. The very language of the charge is, therefore, but an expression of the opinion of the judge that the defendants on trial were guilty of the charge made, and also, that James Myers, who is jointly charged, was likewise guilty, and therefore, according to the judge, his evidence must be viewed with suspicion. A charge more directly invading the province of the jury could not well be conceived. Even when a defendant is on trial, the indictment creates no suspicion of his guilt. The presumption of innocence continues through the whole progress of the trial, and any charge which ignores the presumption of innocence, or which treats it as overcome, even by evidence, is erroneous. *Ogletree v. The State*, 28 Ala., particularly pages 701, 702.

This charge had the double error of telling the jury that Myers was guilty, because charged in the indictment, and therefore that he should be viewed as an accomplice and with suspicion; and also, that the defendants then on trial were guilty, because charged in the same indictment with Myers, and, therefore, they must be viewed with suspicion, and held *prima facie* guilty, because charged by a grand jury with crime. It is true, that the testimony of an accomplice is to be viewed with suspicion; but who is to de-

termine whether he is an accomplice? The jury, and not the judge.

It sometimes happens that the State introduces as a witness an avowed accomplice. In such a case, it is quite proper for the court to charge the jury that the testimony of such witness is to be viewed with suspicion, and that no conviction should be made on his uncorroborated testimony. But when a witness is introduced by the defendant, and he swears that he is not guilty, and testifies as this witness did, it is trifling with justice for a judge to charge the jury that such witness is an accomplice, and that the mere finding of an indictment against him creates a suspicion against the witness.

7. The refusal of the judge to give the charge asked by defendants in the following words, viz : " The proof of an *alibi* by defendants is to be looked at like any other fact proven in the cause," was erroneous.— *Williams v. The State,* 45 Alabama Reports, 57. It was proper to give this charge, in reply to the general written charge given by the court on the subject of *alibi.* This charge, as asked by defendants' counsel, does not assume that defendants had proved an *alibi.* It simply asked that it (*alibi*) should be looked at by the jury like any other fact in the case.

8. The refusal of the charge No. 10, asked by the defendants, was erroneous. Why is flight (in a case of circumstantial evidence, as this,) regarded as competent evidence against a defendant? It is because, in accordance with the experience of mankind, guilty persons frequently flee. This flight is supposed to result from, and be prompted by, a sense or consciousness of guilt in the mind, which compels the person to avoid the scene of his crime and the faces of his accusers. It is therefore admitted in evidence as a circumstance from which a jury may infer guilt. If it can be shown that the flight arose from something else than a sense or consciousness of guilt, it ceases to be evidence of guilt, and the presumption arising from flight is thus rebutted. It is consequently always the privilege of the defendant, in order to rebut the inference to be drawn from flight, to introduce any evidence which tends

to show that the flight did not arise from a sense of guilt. *Smith v. The State*, 9 Ala.; *Oliver v. The State*, 17 Ala., and other authorities hereafter cited under this point.

Now, the charge asked and refused, asked the court to announce as a legal proposition, that if the flight arose from any other motive than a sense of guilt, the flight would not be evidence of guilt. This charge is almost entirely in the language of the best legal authorities, and if there is any truth in logic, it should have been given. To refuse it, was in effect to say to the jury that the flight of the defendant was evidence of his guilt, although his flight did not proceed from a sense of guilt, but from some lawful and innocent motive.—See the following authorities: Roscoe Cr. Ev. p. 17, note 2, and authority cited in note; and the remark on p. 18, ib.; see, also, Wharton Cr. Law, § 714, and authorities cited in notes; *Smith v. The State*, 9 Ala., especially on p. 995; *Oliver v. The State*, 17 Ala. 595, near bottom.

9. In every case of circumstantial evidence, there is a theory of guilt contended for by the State, as explaining every material fact, and reconciling it with every other well established fact; and there is a theory of innocence contended for by the counsel for the defendant, as explaining and reconciling every well established fact proven. In such cases, (those of circumstantial evidence,) the theory of the State and the theory of the defendant are made up of hypotheses more or less numerous, according to the number of independent facts proven. It is essential (in order to convict,) that all the facts should be consistent with the hypothesis or theory of guilt as advocated by the State. 1 Starkie Ev. p. 504, the 2d rule for government of courts and juries in cases of circumstantial evidence. It is essential that the circumstances proven should, to a moral certainty, actually exclude every hypothesis but that of the guilt of the defendant, the one proposed to be proved by the State.—1 Stark. Ev. 510, § 77. It is therefore of the highest importance in arriving at truth, to inquire, with the most scrupulous attention, what other hypothesis or theory

there may be which may agreee wholly or partially with the facts in evidence.

"In criminal cases, the statement made by the accused (through his counsel) is, in this point of view, of the most essential importance. Such is the complexity of human affairs, so infinite the combinations of circumstances, that the true hypothesis (or theory) which is capable of explaining and reconciling all the apparently conflicting circumstances of the case may escape the utmost penetration; but the prisoner, so far as he alone is concerned, can always afford a clue to them. His account of the transactions (through his counsel) is for this purpose always most material and important. The effect may be to suggest a view of the case which consists with the innocence of the defendant."—See 1 Stark. Ev. pp. 511, 512, top page, (marg. p. 513,) § 78.

It is also well settled, that if there be two reasonable constructions which can be given to facts proven, one favorable and the other unfavorable to a party charged with fraud or crime, it is the duty of the judge or jury to give that which is favorable rather than that which is unfavorable to the party accused of crime or fraud.—*Ala. Life Ins. Co. v. Pettway*, 24 Ala. 566, 8th head-note.

The law of Alabama—the constitution of Alabama—gives to every defendant in a criminal case the right to be heard by himself and counsel. And the law provides counsel for him if he be too poor to employ one. Now, why is all this? It must be on the supposition that lawyers, by long experience and study, have become able to aid courts and juries in ascertaining the truth, by their arguments, illustrations, and theories, especially in every case of circumstantial evidence.

Now, what is the effect of the charge No. 3, on page 43 of record, which tells the jury that "it does not matter to you what the theory of the counsel for the State may be, or what the theory of the counsel for the defendants may be"? It is, that it matters not what arguments—what reasonable construction to these facts—what light may be thrown on the complicated facts of this case by the counsel; you, gentlemen, have nothing to do with them. "It

matters not to you what reasonable theory the defendant may suggest, through his counsel, which explains and reconciles all the apparently conflicting facts of this case—disregard it; and you look to the facts yourselves, and pay no attention to the theories of any body! Take no aid in your investigations after truth from the suggestions or theories or arguments of any body!"

How can a defendant be heard, if the theories of his counsel matter not to the jury trying his case!

10. The court erred in admitting the wife of Randall May to be a witness.—Amer. Crim. Law, § 767; 1 Greenl. Ev. §§ 407, 335, and note 4. In this case the defense of each defendant was the same—not guilty; and each defendant attempted to prove an *alibi*.

11. The court erred in admitting the declarations of May, as proven by Moseley, to be introduced as evidence. If these declarations in any manner tended to prove May's guilt, they would have been competent against him. But if these declarations do not tend to prove May's guilt, then they could serve no purpose except to prejudice the minds of the jury against Kelsoe.

These declarations of May were all against Kelsoe, and not against himself. They were therefore irrelevant and illegal. They were simply hearsay.—*Smith v. State*, 9 Ala. *supra*.

The remark of the court that these declarations were introduced for the sole purpose of proving that May was guilty, did not prevent them from doing injury to the other defendant. The error was in the impression made on the minds of the jury, which could not be wiped out by the remark of the judge. In a case of circumstantial evidence a very slight circumstance may become great in its influence. These small influences are beautifully illustrated in the couplet of the poet—

> "A pebble in the streamlet scant
> Has changed the course of many a river;
> A dew-drop, on the baby plant,
> Has warped a giant oak forever."

12. The court erred in refusing to allow the defendant to prove his expressions of friendship and kindness to Otts,

The State had proved enmity to Otts. This hostile state of his mind might be presumed to exist until a different state was shown. Now, how could the defendant prove a change of mind from hostile to friendly?

All the books agree that the fact of a previous difficulty, old grudges, may be competent for the State, in order to prove malice—motive. And all the books agree that the defendant, in order to rebut this presumption of malice, may prove a reconciliation of the old grudge, at any time before the killing; and then the rule not to attribute the killing to the old grudge.

How is a reconciliation to be proved? By the acts and declarations of the defendant made before the killing. Reconciliations are frequently proven by the declarations of the defendant and of the other party to the difficulty. If these declarations of the defendant are made in the presence of the deceased, it is admitted by the counsel for the State that they are competent evidence. Does the fact that they are made in the presence of the deceased make any difference as to their competency? None whatever. If otherwise incompetent, the presence of the deceased would not make them competent. The State is the party to the suit, and not the person with whom the previous difficulty was had. You can not prove a reconciliation by proving the declarations of the deceased, not made in the presence of the defendant. The declarations of the deceased, when made in the presence of the defendant, showing a reconciliation, are competent. On what principle? Simply because his declarations, made in the presence of the defendant, when acquiesced in or assented to, not denied, by the defendant, are, in the eye of the law, the declarations of the defendant as to his state of mind. What difference can it make, then, whether the declarations of the defendant, showing his state of mind, are made in the presence of the deceased or in the presence of some other person?

Whenever the state of the defendant's mind at any given time is to be proved, it can only be done by his acts and declarations. His state of mind can not be proved by any

Kelsoe v. The State.

other person.  I can not know, and therefore can not swear
to another's mind, except by proving his acts and declara-
tions.   Whenever, therefore, the state of mind or body is
to be proven, the bodily or mental feelings of an individual
are to be proved the usual expressions of such feelings
made at the time in question, are original evidence, and
not hearsay; nor is it making evidence for  himself by the
defendant.—1 Greenl. § 102;  *Phillips v. Kelly*, 29 Ala. pp.
632–3;  *McHugh v. State*, 31 Ala. ——;  Wharton's Amer.
Crim. Law, § 664.

Whether these declarations are feigned or not, the weight
to be given to them must be left to the jury.   The court
can not exclude them.

JUDGE & HOLTZCLAW, and HERBERT & BUELL, *contra.*—
1.  When one is charged with a crime, and the circumstan-
ces point to the accused as the perpetrator, facts tending
to show a motive for the commission of the act, however
remote, are competent.—17 Ala. 457.

The evidence of Bazor, therefore, was competent.   The
details of the difficulty, testified to by Bazor, were not gone
into.   The attack was made by Myers on the deceased.
Kelsoe was present, and sided with Myers; and it was com-
petent to show this as evidence of hostility on the part of
Kelsoe to the dececsed, before the deceased was murdered,
and as tending to show a motive in  Kelsoe to commit the
murder, especially when it was shown, as the witness stated,
"that the fight orginated about Kelsoe."

The admission of the evidence to prove the second diffi-
culty between Myers and Otts, the deceased, was proper.
It was the next day after the first difficulty, which occurred
on Kelsoe's account—was in effect a continuation of the
first difficulty—although  Kelsoe was not present, and was
admitted for 'the "sole purpose of proving the death of
Myers, a kinsman of Kelsoe, at the hands of Otts, and to
show cause of enmity towards deceased by Kelsoe."   This
was competent, though remote, to show a motive in Kelsoe
for killing Otts subsequently.

No attempt was made to prove who was right or who was

wrong, in the two difficulties to which Bazor testified; nor were the particulars gone into, further than to show that the Myers' and their friend and relative, Kelsoe, were engaged in them on one side, and the deceased, Otts, on the other side, and that one of the friends and a relative of Kelsoe was killed in the second difficulty, the origin of them having been on Kelsoe's account; which would show, or tend to show, a motive on the part of Kelsoe for afterwards killing Otts.

2. The testimony of Durden, referred to by appellant, was properly admitted.

There is no rule of evidence or law, of which we are advised, which will exclude evidence of the declarations of a party, because the witness can not remember all that was said. If he can not remember all, it is a question for the jury to determine whether what he did hear is worth much or little.

A different rule prevails in proving what the testimony of a deceased witness was on a former trial, and for obvious reasons.

The conversation commenced by talking about the deceased, Otts. It continued for some minutes without break or pause, when Kelsoe said: "If I live I'll kill him, if it takes me a life-time to do it in."

The witness said he understood Kelsoe to be speaking of Otts when he made this declaration. The accused "moved to exclude this declaration from the jury." He made no objection to the witness saying he "understood" that the accused was speaking of Otts.—*Townsend v. Jeffries, Adm'r*, 24 Ala. 329; *Walker v. Blassingame*, 17 Ala. 810; *Garrett's Adm'r v. Garrett*, 27 Ala. 687; *King v. Pope*, 28 Ala. 601; *Newton v. Jackson*, 23 Ala. 355.

3. The witness Moseley was a competent witness. It may be questionable whether the offense of larceny is of the species of the *crimen falsi* which, at the common law, would render incompetent as a witness one convicted of it. 2 Russell on Crimes, marg. p. 973; 1 Greenl. on Ev. § 375.

But however this may be, a verdict of guilty, as in the case of the witness Moseley, is not sufficient to render a

witness incompetent.   It is the judgment only which is re-
ceived as the legal and conclusive evidence of the party's
guilt, for the purpose of rendering him incompetent to tes-
tify.—1 Greenl. § 375.

But further still.   Section 2302 of the Code of 1852 pro-
vides that no objection must be allowed to the competency
of a witness for conviction of any crime, except perjury and
subornation of perjury.

This section of the Code of 1852 has never been re-
pealed.

In the Revised Code, between sections 2703 and 2704, it
is stated in brackets, "(2302) [Repealed by section 2 act
14th February, 1867, p. 435.]"

On looking at the act of 14th February, 1867, p. 435, it
will be perceived that section 2302 of the Code of 1852 is
not repealed—is not even mentioned.

We contend that the statement in brackets in the Re-
vised Code, above quoted, does not repeal section 2302 of
the Code of 1852, nor did the omission to insert that sec-
tion in the Revised Code repeal it.

4. The declarations of one of the defendants on trial,
Randall May, as proved by Moseley, were all competent
evidence as against May; were offered as evidence against
May alone, and were admitted by the court (notwithstand-
ing the multitude of objections) as evidence against May
alone.

May was acquitted; and if there was any error in allow-
ing any of the questions to, and answers of, Moseley, relat-
ing exclusively to May, and not offered or admitted against
Kelsoe, Kelsoe can not avail himself of the error.

5. Some of the early English decisions seem to hold
that the wife, in such a case, would not be competent for
or against a co-defendant of her husband.   For a reference
to the cases, see Wharton's Amer. Crim. Law, p. 358.

Mr. Phillips, in his work on Evidence, in commenting on
one of these cases, says, that it "must be understood as
having been decided on its own particular circumstances,
and not as warranting the conclusion, that where prisoners
set up a separate and distinct defense, the wife of one pris-

oner can not in any case be a witness for another prisoner."—1 Phillips on Evidence, 75; see, also, 1 Greenleaf on Evidence, § 335.

And further. Mr. Greaves, in a note to 2 Russell on Crimes—(Mr. Greaves was of Lincoln's Inn and the Inner Temple)—says: "The authority of these cases [Early English Cases] seems open to some doubt, as they infringe the the rule, as it is only when there is a certain interest in the result that the witness is incompetent, and the utmost that can be said is, that in such cases the evidence has a tendency to produce such a result. It is also a great anomaly that a witness should be competent for a prisoner, if tried separately, but incompetent for him, if tried jointly with the witness' husband."—Roscoe's Crim. Ev. m. p. 158.

6. The declarations of Kelsoe, sought to be proved by the witness Chancellor, were incompetent, because not a part or parts of the *res gestæ.—Oliver v. The State,* 17 Ala. 587; *Spivey v. The State,* 26 Ala. 90; *Lawson & Sweeney v. The State,* 20 Ala. 65; *Starr v. The State,* 25 Ala. 49; *Barthelmy v. The People,* 3 Hill, (N. Y.) 248. See, also, 1 Greenl. Ev. §§ 131, 132, 133.

7. The testimony of the witness Perdue was competent for the sole purpose for which it was offered, viz: To impeach defendants' witness Myers. Myers was not contradicted as to an immaterial matter.

The foregoing disposes of all the objections relating to testimony.

In considering the objections relating to testimony and charges of the court excepted to, the court will note that the bill of exceptions does not purport to set out all the evidence. And it is well settled by this court, by numerous adjudications, that no intendment will be made to put the court below in error; error must be affirmatively shown.

"An affirmative charge of the court, which upon any supposable state of facts would be correct, will be presumed to have been justified by the evidence, unless such presumption is rebutted by the record."—*Tempe v. The State,* 40 Ala. 350.

This court will presume that facts were in evidence to

authorize any affirmative charge given which is relevant to the case, when all the facts in evidence are not set out in the record.—40 Ala. 355.

That part of the affirmative charge relating to the evidence of James Myers was not erroneous, for the reason that none of the evidence showing him to have been an accomplice is set out in the record; save and except that he was jointly indicted with the defendants on trial. And not only is the evidence not set out, but the oral charge itself is garbled; only a portion of the entire oral charge is given in the bill of exceptions.

But the portion given was, on its face, free from error. Although James Myers' being joined in the indictment would be no evidence against him on his trial, yet, being indicted jointly with the defendants for the same alleged offense, when offered as a witness, he was to be regarded as an accomplice, because jointly indicted, so far as his testimony was concerned.

A case has never been known or heard of, where evidence was taken to show a person an accomplice before he could be called an accomplice when offered as a witness. Being jointly or separately charged with the commission of the offense in an indictment, has always been sufficient to authorize him to be regarded and called an accomplice when offered as a witness.

The charge requested as to the *alibi*, was clearly erroneous. It assumed that an *alibi* had been proved as a fact in the case, which alone it was the province of the jury to determine.

Charge numbered 10 requested by defendent was properly refused, because the larger portion of it was abstract, lugged in matters about which there was no proof. The only testimony showing any excuse for flight was Champion's. There was no evidence about "an unwillingness to stand a public prosecution."

PECK, C. J.—1. A bill of exceptions was signed in this case at the instance of the appellant. It does not state that all the evidence is set out; but contains thirty-seven

exceptions to the rulings of the court below, besides the exceptions to the charges given by the court and refused to be given; and forty-four errors are assigned to the rulings of the court on the trial.

It will be a useless piece of labor to examine all these numerous exceptions separately. To do so, will render our opinion obscure and confused, rather than plain and intelligible, as many of them are nearly alike and depend upon the same principles.

The offense was committed secretly, and, as the evidence tended to show, by lying in wait. Offenses so committed can rarely be proved, except by circumstantial evidence. All such cases are surrounded with difficulties, and great carefulness and discrimination are necessary; otherwise innocent parties may be convicted, or guilty ones escape.

In this case, the State first introduced evidence tending to show that the deceased was shot as he was riding along a road, by persons lying in wait behind a log. To show that the appellant was one of these persons, and was the enemy of deceased, as a motive for the act, the State was permitted, against the objection of appellant, to prove by one Bazor, that in March, 1869, two difficulties had occurred between one John P. Myers, a nephew by marriage and friend of appellant, and deceased; that said difficulties happened on two succeeding days; that in the first difficulty said Myers attacked deceased; that appellant was present with a stick in his hands, and, in the language of the witness, sided with said Myers; that appellant had no fight or difficulty himself with deceased, though the evidence showed the fight originated about him. The appellant was not present at the second difficulty, on the next day. In this difficulty said Myers shot twice at deceased, and deceased shot three times at said Myers, and said Myers was killed. This evidence was admitted by the court, only for the purpose of showing a cause of enmity on the part of appellant towards deceased.

Although these difficulties may be regarded as slight evidence of the purpose they were offered to prove, yet, as they terminated in the death of appellant's relative and

Kelsoe v. The State.

friend, who had engaged in them on his account, we think there was no error in permitting the evidence to go to the jury.

2. The conversation between appellant and F. M. Walker, deposed to by the witness E. F. Durden, was properly permitted to go to the jury. It took place, as is manifest, after the difficulties above mentioned, and before deceased was killed. It was a conversation about deceased, and, in answer to the following question asked by said Walker: "What are you going to do about it?" appellant replied, "If I live I'll kill him, if it takes me a life-time to do it." The witness stated that he heard the whole conversation, but did not remember the whole of it so as to repeat it all, but he could repeat the beginning and end of it.

Oral admissions or declarations are to be received with great caution.—1 Greenl. Ev. § 200. There are many good reasons for this stated by the author, which need not be here repeated; but I know of no authority for excluding the declarations of a party altogether, because the witness may not remember all that was said. It often happens that some parts of a conversation make a stronger impression on the mind than others, and such parts may be remembered, and other parts, less impressive, may be forgotten. To exclude conversations and verbal declarations in all cases where witnesses do not remember and can not repeat the whole of them, will be substantially to exclude such evidence from the courts and juries altogether. The true rule in all cases of verbal admissions and declarations is, to leave them to the jury to determine the credit and effect to be given to such evidence, under all the circumstances. In some cases such evidence may be very satisfactory, and in others worth but very little. Much must depend upon the intelligence of the party by whom the admissions or declarations are made, and the intelligence and recollection of the witness by whom they are proved.

3. The court committed no error in overruling the objection to the competency of the witness Moseley, because he had been indicted for horse-stealing, and the jury had at that term of the court returned a verdict of guilty. We

do not decide that, even if judgment had been pronounced on the verdict, it would have rendered the witness incompetent on the ground of infamy, as it is not necessary. But we think it very clear that the witness did not, in legal contemplation, become infamous by the rendition of the verdict, before judgment was pronounced against him on the verdict. Until that was done, it could not be known that a new trial would not be granted, or that the judgment would not be arrested; and in either case the verdict would become a mere nullity, as though it had not been rendered. Mr. Greenleaf, in his work on evidence, (vol. 1, § 375,) says: "We have already remarked, that no person is deemed infamous in law until he has been legally found guilty of an infamous crime. But the mere verdict of the jury is not sufficient for that purpose; for it may be set aside, or the judgment may be arrested on motion for that purpose. It is the *judgment, and that only*, which is received as the legal and conclusive evidence of the party's guilt, for the purpose of rendering him incompetent to testify."—See, also, the authorities referred to in note 5 to this section.

This witness was introduced to prove alleged conversations with the said Randall May, when he and the witness were in the jail together, in the absence of appellant. These conversations were objected to by appellant, but admitted by the court, as was stated, only against said May; and in this there would have been no error, if the evidence of the witness had been confined to such portions of said conversations as tended to prove the guilt of said May only, or such parts as tended to prove the guilt of both, if of such a character that what tended to prove the guilt of May could not be stated without implicating the appellant also. In such case, there would have been no error, if the court at the time the evidence was received had instructed the jury it was evidence against May only, and was not to be considered by them as evidence against the appellant. This, under such circumstances, would have been the best, and all that could be done for the appellant. The State could not be deprived of the benefit of May's statements,

Kelsoe v. The State.

if necessary to prove his guilt, although they might to some extent implicate the appellant.

But no one, it seems to us, can read the evidence of this witness, and fail to see that much of it not only did not tend to prove the guilt of May, but to prove his innocence, and, if true, tended strongly to show that appellant was guilty. Let two or three examples be here given. In one place this witness states that May said, "*I am not guilty of killing Otts*, and I don't know that I know enough to make me a State's witness. I am tired of staying in jail." In another place he states that May said, "Mr. Kelsoe came to borrow my gun. I asked Kelsoe what he wanted with my gun; he said, I want to go a hunting. Kelsoe said, I don't know what I may hunt, but I may hunt some damned rascal." Again, this witness says, May stated that "Mr. Kelsoe went off, I suppose hunting. The next time I saw Mr. Kelsoe, he was at the place where W. C. Otts was killed. I saw Mr. Kelsoe and George Myers sitting on a pine log blown up by the roots. They said, have you seen Willie Otts? I said, I have seen him at Mrs. Holmes'. I then started to Garland, but after I saw them I expected what was going to be, and I went towards home. May then said, I went to my field; I heard the guns fire, and I said to Zade Stinson, There! Willie Otts is killed."

It was proved that Mrs. Holmes lived but a short distance from where Otts was killed. At another time this witness states, that May then went on to tell what he knew about the case; "he said, Mr. Moseley, if you had a son, and I knew who killed him, and wouldn't tell, you would think mighty hard of me." Witness said, "I would, and if you know who killed Mr. Otts' son, you had better tell it." May then said, "I am going to; and the reason I have not done it before, I thought I had to prove what I said. Mr. Kelsoe and Mr. Myers were sitting there, and they undoubtedly must have done it."

All these several statements were objected to by appellant, and, notwithstanding his objections, admitted; the

39

court saying they were admitted only against May. As the only effect of these statements must have been to prejudice the jury against the appellant, and to benefit, rather than injure May, who was acquitted, they should have been excluded; and for this error the judgment must be reversed.

4. The question, as to the competency of May's wife as a witness against appellant, need not be decided. As May has been acquitted, the question can not arise on another trial of the appellant.

5. The evidence of the witness Perdue, introduced by the State to impeach the said James Myers, one of the defendants named in the indictment, who was examined by appellant without objection, was rightly admitted. It was clearly admissible for that purpose.

After the evidence was closed, the court having been requested by the defendants to do so, charged the jury in writing and at length, which charge is set out at length in the bill of exceptions. After the written charge was given, sundry special charges were asked by the State, which were given. The defendants also asked several charges, some of which were given, and others refused. These charges have been carefully examined, and we are unable to discover any errors in the charges given, and we think the rulings of the court correct as to the charges refused to be given. We shall, therefore, say nothing further as to any of the charges refused to be given, except the charge in reference to the flight of the appellant. That charge would have been a very proper charge if the last clause had been omitted, to-wit: "If the facts proven render it doubtful whether the flight was from conscious guilt, the jury ought not to regard it an evidence of guilt." Although the evidence may have been more or less doubtful as to the cause of the flight, that was no sufficient reason for the jury to disregard it altogether. As this charge was asked in writing, the court was required to give or refuse it altogether, and as the latter part of the charge was improper, the whole charge was correctly refused.

Let the conviction and the judgment of the circuit court

be reversed, and the cause remanded for a new trial. The appellant will remain in custody until discharged by due course of law.

