# CASES

IN

# THE SUPREME COURT

## OF ALABAMA.

---

## JANUARY TERM, 1873.

---

## Lewis *v.* The State.

### *Indictment for Murder.*

1. *City Court of Montgomery; jurisdiction of criminal case on change of venue.* — The City Court of Montgomery has jurisdiction, on change of venue, to try a criminal case originating in another county.

2. *Change of venue; presumption in favor of order for.* — When a change of venue in a criminal case is shown by the minute-entry to have been granted on the application of the defendant, and for cause shown, it will be presumed that the order was made on the affidavit of the defendant, that the cause shown was sufficient, and that the county to which the case was removed was the nearest county free from exception.

3. *Practice in examination of witnesses.* — In the mode and manner of examining witnesses, much must be left to the discretion of the court trying the case; and in doubtful cases, where the impropriety of its rulings is not clearly shown, the appellate court will not declare them erroneous.

4. *To what witness may testify.* — A witness, testifying as to a personal conflict between two persons, which he saw, may state that one " was trying to get away from " the other. The expression is not the statement of a mere opinion, but rather of a fact derived from observation.

5. *Same.* — So a witness, after relating a conversation between the prisoner and the deceased, may state that " this was the commencement of the difficulty."

6. *Admissibility of whole conversation, when part has been called out.* — The rule which allows the whole of a conversation to be given in evidence, when a part of it has been called out, does not apply, where a witness for the prisoner in a criminal case, during cross-examination, begins to state what the prisoner said to him at a particular time and place, but is immediately stopped by the solicitor, and told that he did not want to hear what the prisoner had said.

FROM the City Court of Montgomery, on change of venue from the Circuit Court of Dallas.

Tried before the Hon. JNO. D. CUNNINGHAM.

The record in this case has been lost. Nothing but the opinion has come into the hands of the reporter.

H. P. CHILTON, for the prisoner.

BEN. D. GARDNER, Attorney General, *contra*.

PECK, C. J. — After a careful examination of the record, I am unable to discover any error for which the judgment ought to be reversed. I shall consider such objections only as seem to me to require examination.

*First.* It was objected, in the court below, that the trial was improperly removed from the Circuit Court of Dallas County, where the offence charged is alleged to have been committed and the indictment found, to the City Court of Montgomery; that said City Court thereby acquired no jurisdiction of said cause, and had no legal authority to try the same.

In 1863, an act was passed, approved December 7th (Pamphlet Acts, p. 121), entitled, "An act to establish a criminal court for the County of Montgomery, with civil jurisdiction." The 3d section of said act confers on said court concurrent jurisdiction with the Circuit Courts, in the administration of criminal law in said county; and declares that the powers and jurisdiction of the criminal courts of this State are conferred on said City Court, except as to actions to try titles to land, &c. These powers are plenary in everything but to take jurisdiction of actions to try titles to land. Said court, therefore, had the same jurisdiction of, and might try any criminal case that could be tried in the Circuit Court of said county, whether the crime charged was committed in Montgomery County, or in some adjoining county from which the trial was removed. In 1870, by an act of the General Assembly (Session Acts, 1869–70, p. 47), the name of said court was changed to the "City Court of Montgomery;" but the jurisdiction of said court is not in any wise affected by said act. Section 4206 (R. C.) provides that "any person charged with an indictable offence may have his trial removed to any other county, on making application to the court, setting forth specifically the reason why he cannot have a fair and impartial trial in the county in which the indictment is found," &c.; but it does not declare to what court in the county the trial shall be removed. It follows, it may be removed to any court in the county, either the Circuit Court, or any other court having the same jurisdiction as the Circuit Court in criminal cases. This objection was properly overruled.

*Second.* It was also objected, that the transcript did not contain any affidavit, stating the reasons for changing the venue in said cause; and, further, that the facts set forth in the transcript did not justify the order of the court changing the venue to Montgomery County; and that it did not appear that the

County of Montgomery was the nearest county free from exception. The minute-entry contained in the transcript states, that on motion of the defendant, and for cause shown, &c., it was ordered that the trial of said cause be removed from the Circuit Court of Dallas County to the City Court of Montgomery, &c.; there was no error in overruling this objection. As the trial was removed from Dallas County, at the instance and on the motion of the defendant, and as the record states that cause for the removal was shown, we will presume it was on affidavit, and that the cause shown was sufficient; we will also presume that Montgomery County was the nearest adjoining county free from exception, as it is so stated in the order. At any rate, it did not lie in defendant's mouth to complain that the order was irregularly made, as it was made at his instance, and in his favor, and without objection on his part; and, besides, it does not appear that he was prejudiced by the alleged irregularity.

*Third.* I now come to the exceptions taken by the prisoner on the examination of the witnesses. William Larkins, a witness examined by the State, deposed that on the day of the killing, but before it took place, prisoner, deceased, witness, and others, railroad hands, were on a walk from the railroad camp; came to a house where liquors were kept; all went in to get a drink, and were on their return; deceased started off, and prisoner came on behind, and kept quarrelling with deceased; came up to deceased, and said something witness did not hear; prisoner struck deceased; they fought, and were parted; then both went along with the crowd, a hundred and fifty yards from the house; they were quarrelling; deceased cursed back at prisoner; prisoner had his knife open, and made at deceased with it; deceased had a swamp-cane stick, and struck prisoner over the head with it; ran backwards, prisoner following him with knife; deceased fell in a gully, as prisoner was in the act of stabbing him; prisoner killed deceased by stabbing him with knife; prisoner cut him one time, and deceased died in about five minutes; first blow was struck by prisoner near the house. On cross-examination, with much other matter, witness stated that " the parties, prisoner and deceased, were together when he first saw them; the prisoner struck the first blow witness saw, but he did not know who struck the first lick in the fight; witness parted them, and pushed deceased ahead; prisoner had knife in his hand, and deceased a cane; they got together again. Witness did not see any place cut in prisoner's head after we parted them. Prisoner went on a few steps in advance of us; we then passed deceased, and when witness looked, they were fighting; witness did not know who struck the first lick." On reëxamination,

[Lewis v. State.]

the solicitor asked the witness the following question : " If deceased struck the prisoner after he came out of the store, if witness would have seen it." This question was objected to : 1st. Because the proper predicate had not been laid ; 2d. Because it assumed that witness's attention was thus directed to the whole difficulty ; 3d. Because witness has been examined on the same subject in the direct examination, and nothing had occurred in the cross-examination which would allow the question to be asked in that form." The objection was overruled, and prisoner excepted. The witness answered, " that if deceased had struck prisoner, after *witness* came out of the store, he (witness) would have seen it. The only blow deceased struck was when he was running back, and prisoner was after him with knife ; deceased had nothing but a cane in his hand." Prisoner's objection to said answer was overruled, and he excepted.

In the trial of a cause, much must be left to the discretion of the court trying the same, as to the mode and manner of examining the witnesses. It is difficult for a revising court, looking to the record alone, to determine, in all cases, whether an objection was or was not properly overruled ; and in doubtful cases, where the impropriety of the ruling of the court is not clearly seen, it should not be declared to be erroneous. This seems to be such a case, both as it respects the said question, and the answer to it. For this reason we decline to hold the ruling of the court, as to either, erroneous.

*Fourth.* There was no error in overruling the prisoner's objection to that part of the evidence of the witness Gayle, in which he says, " the deceased was trying to get away from the prisoner," because it was stating the opinion of the witness. It was clearly not a mere opinion, but a fact, derived from the observation of the witness, which it was competent for him to state ; but if regarded rather as an opinion than a fact, accurately speaking, it is such character of opinion as may be stated by a person who witnesses a conflict. A witness is competent, from observation, to state whether a person appears to be sick or well at a particular time ; and why may not a witness, who sees a struggle between parties, state whether one " was trying to get away," and the other was trying to prevent his escape ? For myself, I cannot entertain a doubt on the subject, as, otherwise, it would be often impossible to communicate the fact to the mind of the jury ; and whether you call it an opinion or a fact, in either case it is competent to be stated.

*Fifth.* The objection to the statement of the witness Jim M'Cain was rightly overruled. It was a fact, and not an opinion only. The witness related a conversation between the prisoner and deceased, and then said, " This was the com-

mencement of the difficulty." The court committed no error in admitting this evidence.

*Sixth.* Jackson Morgan, a witness for the prisoner, in his cross-examination, began to state what prisoner said at a particular place and time. The solicitor immediately interposed and stopped him, and told him he did not want to hear what the prisoner 'had said. " Prisoner's counsel then proposed to ask the witness all that was said by prisoner and witness in the conversation mentioned by witness, of which he had stated a part. The court refused to allow the question to be asked, and he excepted." There was no error here. The witness had stated no part of a conversation between prisoner and himself. The witness began to state what prisoner had said to him at the jail, to wit, " that he would not have done it for the world," but was at once arrested by the solicitor. He began to make said statement without being asked to do so by the solicitor. This gave the prisoner no right to ask the witness to state all that he said at the time referred to. The prisoner then proposed to ask the witness, " If, in the conversation mentioned, prisoner did not tell witness deceased knocked him down three times before he cut the deceased, and that he cut deceased to protect his own life?" The court correctly refused to permit this question to be asked, because no such conversation was asked for by the State, nor had the witness related any part of such a conversation, but simply began to state what prisoner said, and was immediately stopped by the solicitor.

Two witnesses were then examined as to prisoner's good character. One deposed generally to his good character, without stating how long he had known him; the other, that he had known him for five years, and that his general character was good. Witnesses were also examined as to the general character of Larkins, witness for the State. One said it was bad; three, that it was good. This closed the evidence. The court thereupon charged the jury, to which a general exception was taken. Several charges were asked by the prisoner, all of which were given by the court. The charge has been examined without discovering any error. The charge, as to the effect of the evidence of prisoner's good character is as favorable to him as the law would permit.

Finding no error in the record prejudicial to the prisoner, the judgment is affirmed.