# King *v*. The State.

*Indictment for Murder.*

1. *Competency of juror.*—A person summoned as a juror in a prosecution for murder, who heard the evidence on a former trial or investigation, and who states that "the evidence would have to be very strong to change his opinion"—that it "would be a pretty hard matter to set aside the evidence he had based his opinion on," but that he "had not made up his mind as to the classification of the killing," is not competent as a juror (Code, § 4331), because he has a fixed opinion which might bias his verdict.

2. *Threats by deceased.*—A general, indefinite threat, made by the deceased the night before he was killed, not mentioning the defendant, and not shown to have reference to him—, as, "I am going to win some money to-night, or kill some son of a bitch"—is not admissible as evidence for the defendant, who shot and killed him the next evening while gambling.

3. *Proof of character.*—The rules of evidence governing the proof of character, both on direct and on cross-examination, are stated in *Moulton v. State*, 88 Ala. 116, and *Morgan v. State*, 88 Ala. 223; and the court cites these cases without comment.

4. *Charge on evidence, as to defendant being at fault.*—Whether the defendant was reasonably free from fault in bringing on the difficulty, is a question for the jury; and when there is any evidence, however weak, tending to show that he was not entirely free from fault, the court should leave that question to them.

FROM the City Court of Mobile.

Tried before the Hon. O. J. SEMMES.

The defendant in this case, Tom King, was indicted for the murder of Tom Popham, by shooting him with a pistol; was convicted of manslaughter in the first degree, and sentenced to the penitentiary for the term of five years. During the organization of the jury for the trial, the name of E. R. Quattlebaum was drawn, and he was asked if he had a fixed opinion which would bias his verdict; to which he answered: "Qualifiedly, I have; that is, as to the killing. I am satisfied as to that." He was then asked, "Is your opinion such that it would bias your verdict?" and he answered: "I think the evidence would have to be very strong, to change my opinion. I heard the previous evidence in the case, and I think it would be a pretty hard matter to set aside the evidence I based my opinion on. As to the classification of the killing, of course, my opinion is not made up." The juror being then challenged for cause by the defendant, his exami-

[King v. The State.]

nation was further continued by the court, by question and answer, as follows: *Q.* " If the evidence is different from what you have heard as to the killing, would the opinion you now have in any way bias your verdict, or could you lay aside the opinion you now have, and try the case fairly and impartially upon the evidence alone, without the opinion you now have having any influence whatever upon your verdict; or would the opinion you now have in any way influence your verdict one way or the other?" *A.* "Well, I think it would not. I think I would be impartial enough to render a verdict according to the positive evidence in the case. The only thing I could not certify to would be, that I would be unprejudiced as the case now stands." *Q.* " Would that prejudice influence you?" *A.* "As far as it goes, I think I would be perfectly free to set aside any preconceived idea I have in regard to it, with sufficient evidence to override that present conviction." *Q.* "Suppose the evidence is not such as you have heard, and there should be any conflict in the evidence, as between what you have heard and what was sworn here, and it had fallen short simply of what you had heard; then, would what you have heard lead you to make up any gap in the evidence?" *A.* "No, sir; I think I could give a verdict. I am not prejudiced at all in the case, and would be perfectly free to set aside any evidence that I have previously heard, with evidence, unquestionable evidence." *Q.* "Suppose a witness got on the stand who was to testify to a fact which was different from the fact as you had heard it; and suppose the State should put upon the stand a witness to impeach that witness, and to show that he was not worthy of belief; would you allow what you now know to have any influence as to whether the witness had been impeached?" *A.* " I would not." *Q.* "You would try it upon the evidence, without reference to what you know?" *A.* "I would." The court then held the juror competent, and overruled the challenge for cause; to which ruling the defendant excepted, and challenged the juror peremptorily.

It was shown on the trial that the killing occurred on Sunday night, March 17th, 1889, in a small yard in the rear of the engine-house No. 8, where a party of twelve or fifteen persons were gambling—"shooting dice for money." The game was played on a small, three-legged table, which was propped up against a tree, and was lighted by a lamp suspended from one of the limbs. The defendant, King, Walcott, his brother-in-law, Ed. Russell and others were play-

ing, when Popham came in, and joined in the game, being at the time under the influence of liquor; and he bet only small sums, until he lost about sixty cents. During the further progress of the play, $30 were at one time on the table, of which $5.00 belonged to King, and $15.00 to Russell; and occasional gusts of wind blowing, which moved or blew the money, Popham laid his hand on it. King at once called out that he withdrew his bet, saying, "My bet is off," or words to that effect. Popham then said to him, "Do you mean to say that I will steal your money?" to which King replied, "I don't know about that," or, "I don't know whether you will or not." Popham at once sprang on the table, and kicked or struck at King; but the table was overturned, and he was caught and held by Walcott. While he struggled to get loose, cursing King, and shaking his fist at him, King drew his pistol, and fired twice, each shot taking effect, and killing Popham in a few minutes.

Edgar Harney, or Harding, a witness for the defendant, testified that, at 12 o'clock on the Saturday night before the killing, as he was shutting up his shop, Popham passed, and he heard him say to two or three persons whom he met on the side-walk, "I am going to win some money to-night, or kill some son of a bitch." The court excluded this evidence, on objection by the State, and the defendant excepted. Several other exceptions were reserved to rulings on evidence, but they require no special notice.

The defendant requested the following (with other) charges in writing, and duly excepted to their refusal: (1.) "Under the evidence, if all believed, the defendant did not encourage the difficulty after it had been commenced." (2.) "The evidence, if all believed, shows that the defendant was not in fault in bringing on the difficulty that resulted in the death of Popham."

GREG. L. & H. T. SMITH, and SAM. B. BROWNE, for the appellant.

WM. L. MARTIN, Attorney-General, for the State.

SOMERVILLE, J.—We are all of one opinion, that the juror Quattlebaum, under the principles laid down in *Long v. The State*, 86 Ala. 36, was not a qualified juror, on the ground that he had formed a fixed opinion as to the guilt or innocence of the defendant, which would bias his verdict.

Code, 1886, § 4331.    He had heard the evidence on a pre-
vious investigation, or trial, and admitted in his direct ex-
amination on *voir dire*, that he thought "the evidence would
have to be very strong to change his opinion;" and again,
that "it would be a pretty hard matter to set aside the evi-
dence he had based his opinion on."    The assertion that he
had not made up his mind, as to the "classification of the
killing," was, moreover, an implied re-affirmation of the fact
that he had formed an opinion as to all other issues involved.
The cross-examination does not, in our judgment, remove
the disqualification thus made to appear, especially if the
evidence upon the trial should be substantially the same as
that heard by the juror on the former trial.    For the error
of refusing to sustain the challenge to this juror, the judg-
ment must be reversed.

The court committed no error in excluding the testimony
of the witness Harney, in reference to the threat alleged to
have been made by Popham.    We can see nothing in the
evidence justifying the inference that it was capable of
being so construed as to have any reference to the defendant.
If he had killed King in the rencounter with him, instead of
being killed, this threat would not have been competent evi-
dence against him, on an indictment for murder.    No more
is it admissible in the present case.—*Redd v. State*, 68 Ala.
492; *Jones v. State*, 76 Ala. 8;  *Ford v. State*, 71 Ala. 386;
*Harrison v. State*, 79 Ala. 29.

The rules of evidence bearing on the question of proving
character, both on the direct and cross-examinations, are
fully discussed in *Moulton v. The State*, 88 Ala. 116, and a
proper application of the principles settled in that case will
avoid all difficulties touching this branch of the case on
another trial.    See, also, *Morgan v. State*, 88 Ala. 223.

We think the court did not err in declining to take from
the jury all inquiry as to whether the defendant was reason-
ably free from fault in having brought on the difficulty,
however strongly the evidence may tend to establish this
fact.    The conversation between defendant and the deceased,
according to the version of one or more witnesses at least, is
reasonably susceptible of the construction, that the defendant
impliedly intimated that deceased was disposed to steal his
money, when he put his hand upon it at the gaming table.

The questions raised by the other charges have been dis-
cussed by us sufficiently in our past decisions; and are deemed
to be too well settled for further agitation.

· The judgment is reversed, and the cause remanded. In the meanwhile the defendant will be retained in custody, until discharged by due process of law.