# Terry *v.* The State.

## *Murder.*

(Decided June 1, 1915.   69 South. 370.)

1. *Appeal and Error; Review; Presumption.*—Where the judgment entry recites, "Came a jury * * * who on their oaths say," and the record does not show to the contrary, nor that objection was made to the sufficiency of the oath of the jury, it will be presumed on appeal that the jury were properly sworn.

2. *Same; Harmless Error; Examination of Jurors.*—The state only can challenge a juror for an opinion against capital punishment or a conviction on circumstantial evidence, and a defendant is not prejudiced by any failure to examine the jurors as to their opinion on those subjects.

3. *Homicide; Evidence; Subsequent Acts.*—Where defendant claimed that H. stabbed deceased, and the state claimed that defendant stabbed deceased, the fact that defendant put on overalls between the time when he left the scene of the difficulty, and his return thereto soon afterward, in connection with the other evidence, affords some basis for an inference that he thereby sought to conceal incriminating blood stains.

4. *Evidence; Opinion; Collective Fact.*—Where the question was, "Did defendant have on overalls when he left?" the answer, "They did not look like overalls," was admissible as a shorthand rendering of a collective fact.

[Terry v. The State.]

5. *Homicide; Evidence; Dying Declaration.*—Where defendant stated to his physician, after he received the stab from which he died a few days later, that he would never get up, and later stated to a friend that he was going to die, a sufficient predicate was laid for the admission, as a dying declaration, of his subsequent answer to the friend that it was the defendant who stabbed him.

6. *Same; Evidence; Location of Wound.*—A physician testifying as to the appearance of the wounds on deceased, could indicate on his own body where the knife struck and the direction in which the wound went back.

7. *Evidence; Opinion; Collective Fact.*—Where the question was, "Did you see what defendant did when he got out to the boys?" the answer, "Yes, sir, all that he done was to try and part them," was admissible as a shorthand rendering of a collective fact derived from observation.

8. *Appeal and Error; Harmless Error; Evidence.*—Where an answer had in substance been given by a witness immediately afterward in answer to another question, any error in its former exclusion was cured.

9. *Same.*—Where the state did not attempt to show the flight of defendant, proof as to when defendant was arrested, although its relevancy does not appear, is not grounds for reversal, as it does not appear that it was probably injurious to defendant.

10. *Homicide; Evidence; Explanation of Leaving.*—Where the state had not attempted to show flight, it was not competent for defendant to show that when he left the place, immediately after the difficulty, he did so at the invitation of friends, it being undisputed that he shortly returned.

11. *Witnesses; Bias.*—Any fact tending to show bias or partiality of a witness for the party who called him, may be elicited on the cross-examination.

12. *Same.*—Where, on his cross-examination, the witness denies facts showing partiality, witnesses to contradict him, may be called and introduced.

13. *Same.*—The proper predicate having been laid, the state may show that a witness attempted to induce the state witnesses to go away and remain until after the trial.

14. *Appeal and Error; Objection; Waiver.*—Where no objections were made to the questions to or the answers of a witness, defendant cannot complain that the state laid no proper predicate for showing by its witnesses statements by defendant's witnesses contradictory of their testimony.

15. *Charge of Court; Argumentative.*—A charge directing the acquittal of a defendant if the jury are not so convinced by the evidence of defendant's guilt, that they would venture to act on that decision in a matter of the highest concern and importance to their own interest, is argumentative.

16. *Same; Reasonable Doubt.*—It is an incorrect exposition of the law to state that the jury must acquit unless the evidence of defendant's guilt is clear, positive and abiding, fully satisfying their minds and consciences that defendant is guilty.

[Terry v. The State.]

17. *Same; Invading Province of Jury.*—A charge is invasive of the province of the jury which asserts that if there is a plausible theory sustained by the evidence which tends to show that bystanders killed the deceased, and another which tends to show that defendant did it, and if the jury are not able to say which theory is true, they must acquit defendant by accepting the theory favorable to defendant.

18. *Homicide; Evidence; Flight.*—Where defendant claimed, and introduced evidence to support his claim that the fatal wound was inflicted by one H., without collusion with defendant, and it appeared that H. and deceased had had an independent difficulty immediately preceding the difficulty between defendant and deceased, defendant may show, as part of the res gestæ of the difficulty, that immediately afterward H. left the scene of the difficulty.

19. *Same; Flight; Explanation.*—Although only the immediate leaving of H. forms part of the res gestæ of his difficulty with deceased, yet the fact of his not returning or afterwards being seen or heard of in that community, essential with his leaving to constitute flight or fleeing from justice, may be shown to shed light on and interpret H.'s motive in leaving; the defendant having introduced evidence tending to show that in an independent difficulty with deceased H. had inflicted the fatal wound.

20. *Evidence; Explanation of Incriminating Circumstances.*—The fact that the immediate leaving by defendant of the scene of the difficulty was on the invitation of friends, had no tendency to explain why, when he returned soon afterwards, he had overalls on.

APPEAL from Houston Circuit Court.

Heard before Hon. H. A. PEARCE.

Peyton Terry was convicted of manslaughter in the first degree, and he appeals. Reversed and remanded.

The facts sufficiently appear. In its oral charge to the jury the court says: "Now as I said in my first instruction to you, the question to you is, What are my convictions, based upon the testimony in the case? Is it my judgment, after weighing and considering all of the testimony in case, that the defendant is guilty? If so, then in law he is guilty, and it would be your duty to return a verdict of guilt. If it is your judgment and your conviction, after weighing and considering all the testimony in the case, and from every standpoint, that the defendant is not guilty, then your verdict should be not guilty."

Further charging the jury orally, the court said: "The burden of proof rests upon the state to satisfy you be-

yond a reasonable doubt that the defendant is guilty. If it fails to do that, then your verdict will be not guilty. The burden does not rest upon the defendant to prove that he is not guilty. The law presumes every man to be innocent, although indicted, until his guilt is proven, and until the testimony introduced for the purpose of making out the charge against the defendant reaches that state that the jury can say beyond a reasonable doubt, 'we are satisfied that the defendant is guilty.' "

The following charges were refused to the defendant: "(1) Before you can convict the defendant, each of you must be satisfied to a moral certainty, not only that the proof is consistent with defendant's guilt, but that it is wholly inconsistent with every other rational conclusion, and unless each of you is so convinced by the evidence of the defendant's guilt that you would each venture to act upon that decision, in a matter of the highest concern and importance to your own interest, you must find the defendant not guilty."

Charges 9 and 10 are similar to charge 1. "(34) Gentlemen of the jury, you must acquit the defendant, unless the evidence excludes every reasonable supposition but that of his guilt."

"(39) The court charges the jury that unless the evidence of the defendant's guilt is clear, positive and abiding, fully satisfying their minds and consciences that the defendant is guilty, then they must acquit him."

"(11) Where, in a murder trial, one plausible theory sustained by the evidence tends to show that bystanders killed the deceased, and another tends to show that the defendant did it, and the jury are not able to say which theory is true, they must accept the one favorable to the defendant, and acquit him."

W. L. LEE, and B. G. FARMER, for appellant.

W. L. MARTIN, Attorney General, and W. H. MITCH-
ELL, Assistant Attorney General, for the State.

THOMAS, J.—The contention in appellant's brief
that the record contains no order of court showing the
appointment of the special solicitor who signed the in-
dictment and prosecuted the case is fully met by the
return to the writ of certiorari, which sets out such an
order that is in all things complete.

(1) The suggestion that the record fails to show that
the jury who tried the case were sworn is likewise with-
out merit, as the judgment entry recites: "Thereupon
came a jury of good and lawful men, to wit, A. F. Sin-
quefield, foremen, and 11 others, who upon their oaths
say: 'We, the jury, find the defendant guilty of man-
slaughter in the first degree,' " etc.

In the absence of any disclosure in the record that
an objection was taken in the court below during the
progress of the trial to the insufficiency of the oath that
was so administered to the jury, it will be presumed
on appeal, when the record, as here, shows nothing to
the contrary, that the correct oath was administered.
—Code, § 7274; *Allen's Case,* 71 Ala. 6; *Storey's Case,*
71 Ala. 335.

(2) The failure of the court to interrogate the jury
on the voir dire examination as to whether they, or any
member, had a "fixed opinion against capital or peni-
tentiary punishment, or thought that a conviction should
not be had on circumstantial evidence," was not pre-
judicial to the defendant, and furnishes him no ground
for complaint, since the unfavorable attitude of the jury
on either of these matters would afford cause of chal-

lenge to the state-only, and not to the defendant, and which the state might waive.—Code, § 7278; *Wesley v. State,* 61 Ala. 282; *Harrison v. State,* 79 Ala. 29; *Thayer v. State,* 138 Ala. 49, 35 South. 406.

(3, 4) The evidence was in conflict as to whether the defendant, or some other person, inflicted the knife wounds on deceased from which he died, the difficulty, in which several were engaged and at which others were present, having taken place during a party, and out in the yard in the dark. A circumstance against and unfavorable to the defendant was the fact, if it be a fact, that immediately after the difficulty, in which defendant claimed he took no part, except as a looker-on and attempted peacemaker, he left and returned shortly afterwards in a change of clothes, it appearing from the evidence for the state that defendant did not have on overalls before the difficulty, but that after the difficulty he appeared back at the party in overalls. His change of clothes was admissible, in connection with the other evidence, as affording some basis for an inference that he thereby sought to conceal blood stains which would tend to incriminate him. In this connection, the state asked one of its witnesses, "Did defendant have on overalls when he left?" and the witness replied: "They did not look like overalls." The court committed no error in overruling defendant's objections to the question and answer. The answer falls in the class known as a shorthand rendering of a collective fact.—1 Mayf. Dig. 336, § 27; *Perry v. State,* 87 Ala. 30, 6 South. 425; *S. & N. R. R. Co. v. McLendon,* 63 Ala. 266; *Watkins v. State,* 89 Ala. 82, 8 South. 134; *Swain v. State,* 8 Ala. App. 26, 62 South. 446; *Reeves v. State.* 96 Ala. 33, 11 South. 296; *Orr v. State,* 117 Ala. 69, 23 Sopth. 696; *Patton v. State,* 156 Ala. 23, 46 South. 862.

[Terry v. The State.]

(5) The predicate for the dying declaration of deceased was sufficiently laid. The evidence showed that the deceased received on Saturday night the knife wounds from which he died on the following Tuesday; that he stated to his attending physician on Sunday that he "would never get up"—"would never get well"—and later stated to a visiting friend on Monday, before his death on Tuesday following, that he "was going to die." The state then proved that after this last statement, and in response then to an inquiry from said friend as to who cut him, deceased said that it was defendant. We find no merit in any of the objections of defendant to any of this evidence, all of which we think was competent.—1 Mayf. Dig. 285.

(6) Nor was there any error in allowing the attending physician to state, with reference to the appearance of the wounds on deceased, that: "The knife struck here [indicating by pointing his finger to his own body], and the cut went back in this direction [further indicating on his own body]."—*Reid v. State,* 181 Ala. 14, 61 South. 324; *Fuller v. State,* 117 Ala. 41, 23 South. 688; *Littleton v. State,* 128 Ala. 31, 29 South. 390; *Walker v. State,* 58 Ala. 393; *Bennett v. State,* 52 Ala. 370; *Prince v. State,* 100 Ala. 145, 14 South. 409, 46 Am. St. Rep. 28.

While it is permissible for a defendant to adduce evidence tending to show that another person other than himself committed the crime, yet it is not competent to this end to show that such person fled from the community soon after the commission of the crime, or even that such person had confessed or admitted his guilt; since, though flight and confessions or admissions are competent evidence against the party making them, because they are his own acts or declarations and against

interest, they are not competent evidence in favor of a third party, being regarded by the law as to him as mere hearsay.—*Levison v. State,* 54 Ala. 520; *Owensby v. State,* 82 Ala. 63, 2 South. 764; *Goodlett v. State,* 136 Ala. 43, 33 South. 892; *Kemp v. State,* 89 Ala. 52, 7 South. 413; *Whitaker v. State,* 106 Ala. 30, 17 South. 456. The court consequently committed no error in declining to let defendant prove that one Holloway fled from the community immediately after the crime here charged was committed.

(7, 8) The testimony of the state's witness Edmond Whitaker was to the effect that deceased and said Holloway were engaged in a difficulty out in the yard in the dark, where a number of other persons were present; that witness and one Meadows separated the combatants, and that while witness was in the act of pulling deceased further away from Holloway, the defendant (Terry) came out of the house, and, bringing on a difficulty of his own with deceased, then cut him, administering the wounds from which he died. Defendant admitted that he came out of the house when he heard the noise of the difficulty, but stated that he did so in order to see what was the matter, and to try and stop the fighting, and that he did not cut the deceased, and took no part in the difficulty whatever, except as an attempted peacemaker, in an effort to separate the several parties then engaged in it. Defendant's counsel asked defendant's witness Dykes, who was present at the time, this question: "Did you see what defendant did when he got out to the boys?" The witness answered: "Yes, sir; all that he done was trying to part them." The court excluded this answer on motion of the state. This action of the court was error, since the answer of the witness was merely the shorthand rendering of a col-

lective fact derived from observation.—*Reeves v. State,* 96 Ala. 40, 11 South. 296; *Lewis v. State,* 49 Ala. 1; *Watkins v. State,* 89 Ala. 82, 8 South. 134; *Perry v. State,* 87 Ala. 30, 6 South. 425. However, there was no injury in the ruling of the court, because, immediately after the answer mentioned was excluded, the defendant's counsel asked the witness, "Well, state what he did do," and the witness answered: "He took his hands and pushed them back and told them not to be fighting. He had nothing in his hands."

(9) No flight of the defendant having been shown, we cannot understand the relevancy of the proof by the state as to the time when defendant was arrested. However, it is not made to appear that the error in admitting the evidence probably injured the defendant's case. —Rule 45 of Supreme Court as published in 175 Ala. xxi, 61 South. ix.

(10) The court committed no error in not permitting defendant to prove that when he left the party immediately after the difficulty, he did so on the invitation of some friends, since it is not disputed but what he shortly returned and there was no effort to prove any flight on his part.—*Pate v. State,* 94 Ala. 14, 10 South. 665; *Johnson v. State,* 94 Ala. 35, 10 South. 667.

(11-13) The fact that a witness manifests bias or partiality for the party who calls him is a proper matter for the consideration of the jury in estimating the value of his testimony, and it is a general rule that on cross-examination any fact may be elicited which tends to show such bias or partiality. If the witness denies the facts showing the bias, the cross-examining party may call other witnesses to contradict him.—*Schuster v. State,* 80 Wis. 107, 49 N. W. 30; *Rossett v. State,* 16 Ala. 362; *Haralson v. State,* 82 Ala. 47, 2 South. 765; *Henry v. State,* 79 Ala. 42; 1 Mayf. Dig. 889, § 2.

. The court committed no error, therefore, in allowing the state, after it had laid the proper predicate therefor by question to the defendant's witness Charlie Mc-Cartha, to show that the witness before the trial attempted to induce the state's witness John Buckhalt to leave the state and not return until after the trial.

(14) The defendant's witness Joe Dykes testified that he saw defendant's knife on Sunday, following the difficulty on Saturday night, and that there was no blood on it. The state subsequently introduced Fred Watson, who testified that said Joe Dykes told him, naming the time and place, that he, Joe Dykes, saw defendant's knife on Sunday following the difficulty, and that there was blood on the little blade. Assuming, as defendant contends in brief, that no proper predicate was laid by the state for showing by Fred Watson that Joe Dykes had made the mentioned statement contradictory to that he made on the trial, it can avail defendant nothing, because it nowhere appears that defendant objected to the mentioned testimony of Fred Watson, either to the questions calling it forth or to the answers.

Refused charges 5, 6, 7, 8, 26, and 41 were fully covered by given charges 2, 3, and 4.

(15). Refused charge 1 and 9 and 10 were properly refused as argumentative.—*Rogers v. State,* 117 Ala. 9, 22 South. 666; *Chestnut v. State,* 7 Ala. App. 72, 61 South. 609; *Phillips v. State,* 162 Ala. 14, 50 South. 194; *Montgomery v. State,* 169 Ala. 12, 53 South. 991.

Refused charge 34 (if correct, 1 Mayf. Dig. 172, § 26) was covered by given charge 29.

(16) Refused charge 39 was an incorrect exposition of the law. Besides, it was covered by given charge 38.

(17) Charge 11 was invasive of the province of the jury.—*Fonville v. State,* 91 Ala. 39, 8 South. 688; *Smith*

*v. State,* 88 Ala. 23, 7 South. 103; *Johnson v. State,* 102 Ala. 1, 16 South. 99; *Compton v. State,* 110 Ala. 24, 20 South. 119; 1 Mayf. Dig. 172, § 16. Besides, the proposition asserted was fully covered by given charge 17.

The portions of the oral charge excepted to are, when construed, as the law requires, in connection with the remainder of the charge, free from error.—*Ballanger v. Shumate,* 10 Ala. App. 329, 65 South. 416; *Fowlkes v. Lewis,* 10 Ala. App. 543, 65 South. 724.

We have discussed only the questions urged in brief; but have examined the entire record. We find no reversible error, and the judgment of conviction is affirmed.

Affirmed.

### ON REHEARING.

(18, 19) We are convinced upon rehearing that we erred in the original opinion in one particular. We there said, in justification of the ruling of the lower court in declining to permit the defendant to prove that one Holloway—a third person not charged with the offense and not on trial—left the community immediately after the crime here charged against defendant and had never since been heard of, as follows: "While it is permissible for a defendant to adduce evidence tending to show that another person other than himself committed the crime, yet it is not competent to this end to show that such person fled from the community soon after the commission of the crime, or even that such person had confessed or admitted his guilt, since, though flight and confessions or admissions are competent evidence against the party making them, because they are his own acts or declarations and against interest, they

are not competent evidence in favor of a third party, being regarded by the law as to him as mere hearsay."

Undoubtedly, this is a correct statement of the law as demonstrated by the authorities cited, and we do not wish to be understood as now intending to depart from it one jot or tittle; but, in the application of it in the original opinion to the case at hand, we overlooked a principle, equally as well settled and pertinent here, under which, notwithstanding the doctrine stated, we are of opinion that the defendant was entitled to prove the flight of said Holloway, and this principle is that known in the law as res gestæ. In *Levison v. State,* cited as the leading case in the original opinion to sustain our holding that the fact of the flight of another is not admissible as evidence for defendant, it is said, as indicating that it is admissible when the evidence of the flight is so connected with the evidence of the commission of the crime by that other as to form part of the res gestæ, as follows: "It is certainly true that a person accused of crime may show his own innocence by proof of the guilt of another; [but] the evidence of [the] guilt [of that other] must relate to the res gestæ, and not to the declarations or conduct of the party, subsequent to and having no immediate connection with the crime."

In *McGehee v. State,* 171 Ala. 23, 55 South. 159, our Supreme Court, citing in support the *Levison Case, supra,* also say: "It is, of course, proper for a defendant to show that another  *  *  *  committed the crime with which he was charged, but such proof is confined to substantive facts, and cannot include conduct or admissions, or even a direct confession, unless they are a part of the res gestæ."

See, generally, Wigmore on Evidence, p. 200, § 139 et seq.

From 24 Am. & Eng. Ency. Law (2 Ed.) 662, we quote this text: "The difficulty of formulating a precise rule by which the admissibility of evidence under the doctrine of res gestæ shall be determined is admitted by all the authorities, but it may be stated generally that wherever it becomes important to show upon the trial of a cause a particular fact or event, it is competent and proper also to show any accompanying facts and circumstances which are actually or substantially contemporaneous with it and calculated to elucidate and explain its quality and character, and so connected with it as to constitute one transaction, the rule including accompanying declarations, as well as acts, although such declarations would, apart from this doctrine, be excluded as hearsay."—Ency., supra; *Campbell v. State,* 133 Ala. 87, 31 South. 802, 91 Am. St. Rep. 17; *Maddox v. State,* 159 Ala. 58, 48 South. 689; *Maxwell v. State,* 11 Ala. App. 53, 65 South. 736; *Harris v. State,* 177 Ala. 22, 59 South. 205.

The doctrine applies to acts and declarations of strangers to the controversy, as well as to acts and declarations of the parties.—Ency., supra, p. 666; *Wesley v. State,* 52 Ala. 182; *Smith v. State,* 52 Ala. 407; *Robertson v. Smith,* 18 Ala. 220.; *Nelson v. State,* 130 Ala. 83, 30 South. 728; *Collins v. State,* 138 Ala. 57, 34 South. 993.

If, then, it was competent—as was held in the opinion, and as is undoubtedly the law—for defendant to prove that Holloway, and not himself, and without collusion with him, committed the crime, then, under the doctrine of res getæ, it was equally competent for defendant to show, as a part of the res gestæ of the commission of the offense by said Holloway, that the latter, immediately upon inflicting on deceased the alleged

knife wounds from which he afterwards died, left the scene of the difficulty. Certainly the fact of his leaving is so closely connected with the event, which inferentially instinctively gave rise to the leaving, as for it to be said that the leaving was a part of res gestæ of that event or occurrence.—1 Mayf. Dig. 772. And while the fact that Holloway, after so immediately leaving, did not subsequently return, and has not since been seen or heard of in that community, is a fact subsequent to and not so contemporaneous with the main fact, the commission of the crime by him, as to form a part of the res gestæ of that fact, yet it is so connected in evidence with the fact of his leaving, which, as seen, is a part of the res gestæ of the main fact, as to be admissible in evidence for the purpose of shedding light upon and interpreting his motives in leaving. If upon leaving he merely went to his home, or to his usual place of abode, and openly remained there, not concealing himself from the public or the officers of the law, which the jury might infer he did in the absence of evidence to the contrary, then the fact of his leaving furnishes but slight, if any, incriminating evidence that he committed the crime. On the contrary, if, since leaving, he has not been seen or heard of in the community in which he resided up to the time of his leaving, which was immediately after the difficulty between him and deceased, then the fact of his leaving affords strong circumstantial evidence that his leaving was prompted by a consciousness of guilt and an intent to avoid apprehension and punishment.

The term "flight," or "fleeing from justice," signifies, in legal parlance, not merely a leaving, but a leaving or concealment under a consciousness of guilt and for the purpose of evading arrest. Such consciousness and pur-

pose is that which gives to the act of leaving its real
incriminating character.—3 Words and Phrases, 2848;
*Sylvester v. State,* 71 Ala. 17; *Kelsoe v. State,* 47 Ala.
573; *White v. State,* 114 Ala. 11, 22 South. 111. There
is no way of determining either such consciousness or
purpose of another, which is a mental state, except in-
ferentially and from such evidence as he may furnish
by his words and acts, the latter of which speak the
louder.

If, then, it is competent, as we hold, to prove as a
part of the res gestæ of the difficulty between Holloway
and deceased that Holloway immediately left after such
difficulty, then it is competent, for the purpose of show-
ing his motive in leaving, to prove that he has never
since been seen or heard of in that community, although
the latter fact is not a part of the res gestæ of the dif-
ficulty. Of course, in any case where the leaving is not
so closely connected in point of time and otherwise with
the difficulty that it might be said that it was instinc-
tive upon that occurrence, a part of the res gestæ of
it, then neither the fact of the leaving, nor the fact that
the person has not since been seen or heard of, is ad-
missible; but where the leaving is so closely connected
as to become a part of the res gestæ of the difficulty,
then not only the fact of the leaving, but the fact that
the person has concealed himself, whether by going away
from the community or by hiding himself in the com-
munity, so that he has not been since seen or heard of,
is admissible evidence; since it takes both a leaving the
scene of the difficulty and a subsequent hiding out, eva-
sion, or concealment in the community or a leaving of
the community for parts unknown, to constitute flight.
When, therefore, our Supreme Court says, in effect, as
before pointed out, that flight of another may be proved

9—13

when it appears that it is a part of the res gestæ of the commission of the offense by that other, we understand them to mean that, not only the leaving immediately after the difficulty may be proved, but also the fact that the party followed it up by leaving the community, or by concealing himself in the community, one or the other of which may be inferred when it appears that since the leaving he has not been seen or heard of.

In the case at bar it appears without dispute that Holloway and deceased were in a difficulty out in the yard in the dark, when the defendant came out to it. Defendant's evidence tends to show that when he so came out deceased had already been cut, and had received at the hands of Holloway the knife wounds from which deceased died, and that Holloway was being pulled away from deceased when defendant came out, and that Holloway was then pushed out of the gate. In this connection we think that defendant should have been allowed to prove, as he offered to do, that Holloway went on off, that is, left the scene of the difficulty, immediately, and had not been seen or heard of since in that community. There is no evidence tending to show that defendant aided or abetted or conspired with Holloway to do the act; but the undisputed evidence tends to show that just as the difficulty between Holloway and deceased was ended, an independent difficulty there occurred between defendant and deceased. Deceased says, according to his dying declarations, and his witnesses say, that defendant, and not Holloway, cut him (deceased). Defendant and his witnesses deny that defendant cut deceased at all. As to who cut deceased out there in the dark that night, where none could see clearly, and where most of the parties and the others present were drinking, whether defendant or Holloway, as to which

the testimony of the many witnesss, as seen, is in serious and hopeless conflict, was the real issue before the jury; and we think that, as a part of the res gestæ of the transaction and as shedding light on the main inquiry, the defendant should have been permitted to show the immediate flight of Holloway in connection with the evidence tending to show that Holloway, and not defendant, did the cutting. Of course, if defendant was an aider or abetter of Holloway at the time, or had previously counseled or procured or conspired with Holloway to commit the act, the rule would be different, as defendant would then be a particeps criminis and equally responsible for the acts of Holloway as Holloway himself. The evidence, however, as said, shows to the contrary, and the only question is: "Did deceased receive the knife wounds in the difficulty with defendant or in the difficulty with Holloway; separate difficulties occurring one right after the other at the same place?"

We also held in the opinion, and we think properly so, that it was competent for the state to show, as an incriminating circumstance against defendant, that defendant, soon after the difficulty, also left, but returned shortly afterwards in a change of clothes (in overalls,) as this, we said, afforded some basis, in connection with the other circumstances in the case, for an inference that it was defendant's purpose in putting on the overalls to conceal blood stains on his other clothes; and we also held, and we think properly, that it was not error for the court to decline to permit the defendant to show that when he left he did so upon the invitation of others. If the state had offered evidence tending to show flight on the part of defendant, then it would have been permissible for defendant to offer evidence tending to

explain his leaving to show that he left, not from a consciousness of guilt, but for other reasons.

.  (20) Defendant's counsel now insist that the evidence that defendant left upon the invitation of others was admissible, although no evidence of flight was shown, as it tended, it is insisted, to explain why defendant returned with overalls on. Certainly the bare fact that defendant left upon the invitation of others furnishes no explanation as to why he had overalls on when he returned. The overalls, and not the leaving, are the incriminating circumstances against defendant. If he has any explanation as to why he put on overalls it does not appear. On the contrary, he chose to deny, rather than to explain, putting on the overalls, and certainly the fact that he left the party on invitation sheds no light on the inquiry as to whether he put on overalls or not.

We are likewise still of the opinion that the testimony of the physician as to the appearance of the wounds on deceased, to the effect that "the knife struck here [indicating], and the cut went back in this direction," was entirely competent, as shown by the authorities cited in the original opinion. This holding is, in our judgment, clearly not in conflict with our holding in *Rigell v. State,* 8 Ala. App. 46, 62 South. 977, and cases there cited, as is too manifest, we think, from an examination of those cases, to require discussion.

Application for rehearing granted, judgment of affirmance set aside, and a reversal and remandment of the cause ordered.