21 So.2d 277

### MELVIN v. STATE.

4 Div. 846.

Court of Appeals of Alabama.

Dec. 12, 1944.

Rehearing Denied Jan. 9, 1945.

---

[1] Ante, p. 4.

E. O. Baldwin, of Andalusia, for appellant.

Wm. N. McQueen, Acting Atty. Gen., and John O. Harris, Asst. Atty. Gen., for the State.

CARR, Judge.

Appellant Bordeman Melvin and his brother, Olon Melvin, were jointly indicted for assault with intent to murder. A severance having been granted, appellant was tried and convicted as charged. The appeal is here on this judgment of conviction and the sentence rendered thereon.

The evidence is not in conflict in establishing the fact that appellant cut Walter Ray Guy with a pocket knife.

The prime question as to the alleged assault centers around the inquiry as to whether or not appellant was justified on the doctrine of self defense which he claimed. Touching this query the testimony is in irreconcilable discord. A jury question is clearly presented. The only written charge refused by the lower court was the general affirmative charge in appellant's behalf requested. This charge was refused without the semblance of error. King v. State, 89 Ala. 146, 7 So. 750; Davis v. State, 214 Ala. 273, 107 So. 737.

It appears without denial that the affray —the basis of this prosecution—occurred just outside a cafe operated by State's witness, Miss Pinkie Sansom. Appellant, his brother, Olon, and Walter Ray Guy had immediately prior thereto left the inside enclosure of the cafe. Appellant took the position that Guy became offended at some unbecoming remarks defendant made in the presence of or to Miss Sansom while the parties were in the restaurant and in resentment of this displeasure Guy followed him to the outside and there first assaulted appellant.

On cross-examination Miss Sansom was asked:

"Guy hangs around your place nearly all the time, doesn't he?"

"Now isn't it a fact that ever since you have been there that Guy has been down at your place consistently?"

"Don't you know that Guy and his wife separated on account of his staying down there with you?"

"And don't you know because of your conduct with Guy that Mrs. Clark, the woman with whom you board and who lives right back of the café, has ordered you to move?"

Appellant's counsel stated to the court in support of his insistence of the materiality of these questions that he proposed to show the connection between witness and Guy at the time of the difficulty; that the jury might judge the character of the witness; and as shedding light on her credibility.

Objections were sustained to each of the above questions and exceptions were duly reserved.

We will treat this matter within the limits of the declared purposes of the offer made by appellant's counsel. In doing so we are adhering to the rule appertaining.

As stated in Thompson v. Drake, 32 Ala. 99: "The plaintiff, by offering the evidence for three specified purposes, must be regarded as having admitted its incompetency for any other purpose; and he will not be permitted to allege its competency in any points of view not embraced in the special grounds presented to the court below. * * * A different decision would open the door for the misleading of the circuit judges, by the presentation of feigned grounds of objection; and would impose upon this court the duty of reversing judgments, where the court below had correctly decided the points presented to it."

See also: Randolph v. Sharpe, 42 Ala. 265; 5 C.J.S., Appeal and Error, § 1742, p. 1051.

The last two questions set out above are obviously objectionable in that each attempts to elicit an answer that would disclose the uncommunicated intent or purpose of other parties. Holmes v. Holmes, 212 Ala. 597, 103 So. 884.

It has been definitely settled by an overwhelming array of authorities that an adversary has the privilege to test the interest, bias or partiality of one who testifies as a witness against him. Drummond v. Drummond, 212 Ala. 242, 102 So. 112.

In the instant case the matter should have been approached in the following manner: The witness should have been first asked to give her state of feelings toward the alleged injured party. She may have admitted it was good. In the event she had answered her state of feelings was bad, resort then could have been had to further questioning in an effort to prove the contrary. In the case at bar this procedure was not followed.

We recognize and reaffirm the principle that wide latitude should be granted by the trial court in the cross examination of witnesses touching or bearing on their credibility, interest, bias or partiality. However, we will not hold the primary court in error when the above rule is not observed. Russell v. State, 19 Ala.App. 425, 97 So. 845; Southern R. Co. v. Harrison, 191 Ala. 436, 67 So. 597; Sullivan v. State, 25 Ala.App. 140, 142 So. 110; Terry v. State, 13 Ala.App. 115, 69 So. 370.

Miss Sansom having testified as a witness in the case, her general bad character in the community in which she lived was in issue for the purposes of impeaching and discrediting her testimony. For the same purposes the inquiry could have been extended to her character for truth and veracity. Hunter v. State, 20 Ala.App. 152, 101 So. 100; Johnson v. State, 203 Ala. 30, 81 So. 820.

Nevertheless, the rule just above stated does not permit proof of want of chastity to be singled out and made a ground for impeaching the character or reputation of a witness for truth and veracity. Spicer v. State, 105 Ala. 123, 16 So. 706; Swint v. State, 154 Ala. 46, 45 So. 901.

Appellant asserted and offered evidence to support the contention that at the time of the difficulty in question he also received bodily injuries. In an effort to make proof of this claim a witness for defendant was asked whether or not appellant on account of his complaining with his shoulder and arm left the field where witness had seen him. Clearly this called for the conclusion of the witness and was subject to the objections interposed. Reeves v. State, 96 Ala. 33, 11 So. 296.

The court sustained an objection of the solicitor to an inquiry sought from

appellant relating to what his physician, Dr. Rawls, told him with reference to suggested treatment for defendant's injuries. This called for hearsay evidence. It may be observed also that no harm inured to appellant in this ruling. The doctor testified in detail the nature of and his advised treatment for the injuries.

■ The State made an effort to prove, by interrogating appellant, that the wounds of which he complained were not in fact received during the encounter with Guy, but at a prior time in an altercation with one Strickland. The court sustained objections to this question, however, stated that permission would be given the State to show that appellant received his injuries on another occasion, but that the details of the former difficulty would be disallowed. Apparently in an effort to comply with this declaration of the court, the solicitor reframed his question in three or four different forms, neither of which received the approval of the trial judge, and objections were sustained to each. Appellant's counsel moved for a mistrial, asserting that the matter had been unduly paraded before the jury and by reason of this fact the rights of the defendant had been seriously impaired.

A careful examination of these questions will convince the most incredulous that no merit should be accorded this insistence and the court properly overruled the motion for a mistrial. The case of Pointer v. State, 24 Ala.App. 23, 129 So. 787, and other cases cited by appellant's counsel in brief in support of this position are distinguishable without difficulty.

■ Objection was interposed to the introduction of the shirt which undisputedly was a part of the wearing apparel of Mr. Guy at the time of the affray with appellant. The garment showed cut places which, according to the injured party's testimony, were made by the knife in the hand of appellant. It is doubtless true that there was no conflict in the evidence as to the location of the wounds on the body of Mr. Guy; however, the shirt had been laundered subsequent to the assault and was in no way offensive in appearance or harmful to appellant in its introduction. Benton v. State, 31 Ala.App. 338, 18 So.2d 423; Smith v. State, 183 Ala. 10, 62 So. 864; Rollings v. State, 160 Ala. 82, 49 So. 329.

■ During his closing argument to the jury, the solicitor made this statement: "They had a motive in demanding a severance." Objections were promptly sustained to the statement, and a motion to exclude same was also granted. The trial throughout evidences much care and caution on the part of the presiding judge. This characteristic of fairness was further demonstrated by the judge's treatment of the immediate matter. He not only readily excluded the statement from the jury's consideration, but he gave the following instructions as a part of his oral charge to the jury: "The fact that a severance has been granted at the instance of this defendant raises no presumption against him whatever. He is exercising a legal right, and it is not a question of his motive or question of why it was done. That is a legal prerogative given each defendant to ask for a separate trial, and that is what was done in this case. So far as Olon Melvin is concerned you should not consider any case against him. He is not being tried; just the defendant Bordeman Melvin."

We are not left in the slightest doubt that any harm resulted to the defendant growing out of this incident. Burkett v. State, 215 Ala. 453, 111 So. 34; Hall v. State, 24 Ala.App. 75, 130 So. 531, certiorari denied 222 Ala. 26, 130 So. 533; Williams v. State, 18 Ala.App. 83, 89 So. 97; Mandell v. State, 21 Ala.App. 404, 108 So. 635.

■ Objections were sustained and on motion the jury was instructed to disregard the following statement of the solicitor in his argument to the jury: "There is a prevalent idea in Covington County and has been for sometime that people can pay off, and I hope you will help me." We are of the opinion that the lower court could have with legal propriety allowed this statement to remain with the jury. There was evidence in the case that the defendant told the sheriff soon after the alleged assault that he did the cutting and was ready to pay off. To this statement the sheriff replied: "The court would have to decide that."

Be this as it may, the primary court, again manifesting abundant fairness and caution, excluded the statement. In view of the authorities cited just above it could not, with any plausibility, be contended that any injury inured to appellant or that his rights were in any manner affected.

Appellant in his motion for a new trial makes the point that the solicitor in his closing argument made some objectionable

statements to the jury, and at the time of their utterances the presiding judge had absented himself from the bench and on account of the inaccessibility of the judge no objections were then interposed. The avowed offending statements are set out in the motion for a new trial and are made a basis for insistence that the verdict should have been set aside because of the asserted remarks. On the hearing of the motion, much testimony was taken reflecting the situation at the time. It appears to us that a true, accurate and fair disclosure of the circumstances is to be found in the statement of the presiding judge, made for the record in the case. It follows:

"I might state for the record that the court might not have been sitting on the bench, but that I was either in this jury room or that one which borders on the court room with the door open so I could hear every word that was said between the parties during the argument—every word of the argument, and no objection, as Mr. Baldwin stated, was made."

It was undisputed that the judge was never more than twenty or twenty-five feet away from the jury and the official court reporter was seated within five feet all during the arguments of the attorneys.

We are of the opinion that the instant case in this particular is not analogous in point of fact to the case of Woods v. State, 19 Ala.App. 299, 97 So. 179.

In 23 C.J.S., Criminal Law, § 972, p. 300, after asserting that the general rule requires the continued presence of the presiding judge during the entire proceedings of the trial, the text observes further: "Nor, in some jurisdictions, is his absence from the room reversible error, where he remains in a position to observe and hear the proceedings and to pass upon any questions which may arise therein, *or where he is at all times within immediate call.*" (Emphasis ours.)

The last expression of our appellate courts we find on this inquiry is in an opinion by Justice Thomas of the Supreme Court in Smith v. State, 230 Ala. 18, 158 So. 808, 811. As we interpret the holding of this able opinion and the authorities cited therein, we do not reach the conclusion that our Supreme Court there laid down a rule that the presiding judge must at all times during the arguments of coun-

sel occupy a seat on the bench or rostrum. Neither reason nor law would warrant the adoption of so strict a rule.

 We reaffirm with added emphasis the quotation in the Smith case, supra: "There can be no court without a judge, and his presence, as the presiding genius of the trial, is as essential at one time as another. The argument is an important part of the proceedings, during which the judge cannot properly absent himself."

Webster's New International Dictionary defines the word "absent" as follows: "To take or withdraw (one's self) to such a distance as to prevent intercourse." Great care and caution should be observed by the trial judge to avoid even the slightest doubt of his accessibility.

 In the instant inquiry it appears to us without serious room for a contrary view that the judge and court reporter were both actually present and appellant's attorney was not deprived of the opportunity to make the objections to the alleged remarks of the solicitor. Counsel having thus failed, the question is not properly before us for review. King v. State, 17 Ala.App. 536, 87 So. 701, certiorari denied 205 Ala. 11, 87 So. 703; Anderson v. State, 209 Ala. 36, 95 So. 171.

 Another ground assigned for a new trial takes the point that while the jury was deliberating within the confines of its secret chambers one of the twelve voluntarily advanced the information that one of appellant's witnesses, Dock Wiggins by name, was regularly employed with informant at a cotton gin and said witness had been continuously on his job. Proof was taken on the hearing of the motion in support of this ground. The argument is here made in brief that this apprisal weighed heavily against the evidence of witness Wiggins who testified as an eye observant of the assault between appellant and Guy.

The guaranteed secrecy of the consultations of the jury, making an effort to reach a verdict, would be seriously violated to permit a claim of this nature to be investigated. It is the settled law in this State, based on an array of authorities and on public policy, that the verdict of a jury cannot be impeached in the manner and for the reasons here asserted and attempted. Clemons v. State, 17 Ala.App. 533, 86 So. 177; Mullins v. State, 24 Ala.App. 78, 130 So. 527, certiorari denied 222 Ala. 9,

130 So. 530; Rayburn v. Crocker, 31 Ala. App. 542, 19 So.2d 554; Taylor v. State, 18 Ala.App. 466, 93 So. 78.

Only one other query remains that merits consideration. The twelfth ground of the motion for a new trial is as follows:

"Some of the States witnesses testified that bales of cotton were so near the place of the difficulty that there was not sufficient space for the Henderson and Durell car to park, which was not true and which defendant had no opportunity to rebut."

As we understand this insistence, effort was made to prove, on the hearing of the motion for a new trial, conditions which were in denial of statements of witnesses on the main trial as to the location of some bales of cotton near the situs of the assault. The lower court sustained the State's objection to this offer and in doing so was clearly correct. Woodward Iron Co. v. Sheehan, 166 Ala. 429, 52 So. 24; Fries v. Acme White Lead & Color Works, 201 Ala. 613, 79 So. 45.

So far as the record discloses the primary court committed no error on the trial of appellant. The judgment is, therefore, affirmed.

Affirmed.