BOWEN, Judge.
Michael Ware was convicted of murder for the shooting death of James Earl Davis. He was sentenced to 41 years in the penitentiary and was ordered to pay $10,000 to the Crime Victims Compensation Fund. On this appeal of that conviction, he raises three issues.
I
First, he claims that the trial court erroneously restricted his right to cross-examine State’s witness Develina Coleman, an eyewitness to the shooting. The record shows the following occurred:

“CROSS-EXAMINATION

“BY MR. APPELL [defense counsel]:
“Q. How old are you?
“A. Twenty-one.
“Q. And how old was James Davis?
“A. Forty-four.
“Q. You met him when you were 16
years old?
“A. About 15.
“Q. And he was 40?
“A. Yes.
“Q. You were friends with him for that time frame?
“A. Right.
“Q. You partied together?
“THE COURT: Wait a minute. I don’t want any talking in this courtroom. (Jury out)
“THE COURT: What difference does it make how old she was and how old is this man?
“MR. APPELL: First of all, for the record, there was no objection to that question.
“THE COURT: I don’t care whether there was an objection or not. I agree with you. The District Attorney at that point was derelict. But I won’t *1175 let you lambast this lady. That’s what it seems to me you were doing. What relevance does it make how old she is and how old the man was? Tell me.
“MR: APPELL: I will try to show that this woman was doing narcotics and I will try to show that this woman was under the domination of this man for a long period of time and he had influenced her.
“THE COURT: If she was doing narcotics, it wouldn’t make any difference whether he influenced her or not. I gather you are going to try to test her faculties. I’m not a nut. I’ve got sense enough to know what you are doing. What you are trying to do is show that a 16-year-old woman was going with a forty-year-old man. That’s a question for another day and another time. But I won’t have you lambast her character in that vein. You can lambast her as to truth and veracity, but how loose she lived, I won’t have you drag her through the mud.
“MR. APPELL: We take exception.
“THE COURT: You can have an exception. But don’t you do that. Don’t drag her through the mud on something that has no probative value in this courtroom. The issue is about whether or not a murder took place and I will let you question her as to anything that would reflect on her ability to tell the truth or to know what she says she saw and to test her mental faculties. But whether she lives with a man at a young age, that’s a question that should have been decided by the Juvenile Court at that time. Whether she lived a loose life, that is a question to be decided by somebody else, not me at this hearing. I will not let you come in here and drag her through the mud. You might do it elsewhere, but you won’t do it here.
“MR. APPELL: I only asked the question in response to the question of the prosecuting attorney of how old are you. I have a right to ask that question. I have a right to let the jury know how long was their relationship, how long have they known each other.
“THE COURT: The fact that she’s known him — She’s known her preacher 30 years, maybe. What you are trying to do — And I’m not crazy — Is show that this lady at 16 years of age was running around with a man who was greater in age than she was. That’s what you are trying to do. I’m not crazy. Don’t ask me to be ignorant. The jury is out of here and I’m telling you that now. I’ve been a lawyer. I will let you test her mental faculties. I will let you find out whether or not they were as you say doing drugs. That has some relevance in this case, but whether or not — What kind of life she lives — And I’m going to tell you, you ought to protect your witnesses.
“MR. STOKESBERRY [deputy district attorney]:
I was about to object, Your Honor. I believe everything that he asked was in evidence.
“THE COURT: Is it in evidence that the friendship that she had cultivated with this man since she was 16 years of age, was that in evidence?
“MR. STOKESBERRY: The only thing in evidence was the fact of the period of time that she knew him, her age, and his age. Those facts were present and I suppose he could have argued them if he wanted to.
“THE COURT: But that isn’t what he was doing, Mr. Stokesberry. This man is trying to show that this lady and this man were socializing and doing drugs. I will let you establish, if that be the case, that they were doing drugs, as you used the term. That’s relevant because if she was on drugs then it might have impaired or impeded her ability to know what she saw. But how she lives, and I’m not saying if she’s a concubine or whatever, that has nothing to do with this trial. You are not going to drag witnesses with me sitting up here.
“MR. STOKESBERRY: I believe she said they were friends.
*1176 “THE COURT: I understand that. Friends are quote, unquote.
“I take it he was your boyfriend, wasn’t he, madam?
“A. No.
“THE COURT: Did you have a relationship with this man?
“A. No.
“MR. APPELL: I will abide by the Court’s ruling.”
“It has been definitely settled by an overwhelming array of authorities that an adversary has the privilege to test the interest, bias, or partiality of one who testifies as a witness against him.” Melvin v. State, 32 Ala.App. 10, 14, 21 So.2d 277, 279 (1944), cert. denied, 246 Ala. 493, 21 So.2d 282 (1945). The fact that Ms. Coleman had been “friends with,” or had “partied” with the victim was relevant to show her partiality toward the victim and her support for the State in a prosecution of the person charged with his murder. The trial court’s action in cutting off cross-examination following the question whether the witness and the victim had “partied together” was error. See Vaughan v. State, 201 Ala. 472, 475, 78 So. 378, 381 (1918) (wherein the court held that questioning witness about whether he drank and played cards with accused was “proper on cross-examination as tending to show the relation existing between the parties ... as having some bearing before the jury on the question of bias”) “As affecting credibility, it is permissible, on cross-examination, to inquire of a witness his relation to the parties involved.” Williams v. State, 44 Ala.App. 503, 505, 214 So.2d 712, 714 (1968).
Moreover, had defense counsel asked whether Ms. Coleman and the deceased were intimate, this inquiry would also have been relevant. See Smith v. State, 22 Ala.App. 36, 37, 111 So. 763, 764 (1927) (wherein the court held it was “relevant for the defendant to prove that the relationship between [the witness and the deceased] was not only friendly, but intimate, as tending to show interest and bias, in the prosecution of the person charged with the murder of her friend and intimate”)
The court’s action in limiting cross-examination does not, however, constitute reversible error, because the five-year friendship between the witness and the deceased was clearly before the jury. The existence of this friendship was elicited not only on cross-examination by the defense, but also on direct examination by the State. The court’s ruling,' though erroneous, did not prejudice the defendant, as shown by Ms. Coleman’s negative answers to the court’s questions, outside the presence of the jury, regarding whether the deceased was her “boyfriend,” or whether she had “a relationship” with the deceased. Although the defense was improperly prevented from pursuing this line of questioning, Ms. Coleman’s answers to the court indicate that any further attempt by the defense to elicit from her the fact that she and the victim enjoyed anything more than a simple friendship would have been unsuccessful. Rule 45, A.R.A.P.
II
The defendant argues that he was entitled to a jury charge on the lesser included offense of manslaughter.
A defendant accused of a greater offense is entitled to have the court charge on lesser offenses included in the indictment if there is any reasonable theory from the evidence to support the lesser charges, regardless of whether the State or the defendant offers the evidence. Ex parte Pruitt, 457 So.2d 456, 457 (Ala.1984). “[W]here the only reasonable conclusion from the evidence is that the defendant is guilty of [the greater offense] or no crime at all,” lesser included offense charges are properly refused. Williams v. State, 377 So.2d 634, 637, (Ala.Cr.App.), cert. denied, Ex parte Williams, 377 So.2d 639 (Ala.1979) (quoted in Ex parte Pruitt, 457 So.2d at 457). “If, however, the defendant denies the charge but the evidence presented by the State suggests a reasonable theory supporting a charge on a lesser offense, the trial court is obliged to give a charge on the lesser offense when requested.” Ex parte Pruitt, 457 So.2d at 457.
*1177 Here, the defendant denied his participation in the homicide and presented an alibi defense, his mother and brother testifying that he was at home in bed at the time of the shooting. There was absolutely no evidence offered by the State which would have supported the theory that defendant was guilty of manslaughter. The only offense supported by the State’s evidence was an unprovoked, intentional killing. Under the circumstances, defendant was due to be convicted of murder or acquitted outright, and the manslaughter charge was correctly refused.
Ill
The defendant also insists that the refusal of the following written requested charges embodying his “theory of the defense,” was error:
“37. Ladies and gentlemen, I charge you that the Defendant’s theory of the case is that he did not kill James Davis, and had absolutely nothing to do with the crime, and further that the crime was committed by some other individuals acting in concert with each other.
“38. I charge you, Ladies and Gentlemen of the jury, that the theory of the defense is that Michael Ware had nothing whatsoever to do with the charge in this case.
“39. I charge you, Ladies and Gentlemen of the jury that the theory of the defense is that Michael Ware had nothing whatsoever to do with the crime or charges in this case and further that the crime was committed by someone else. Further, that the State’s witness Develi-na Coleman was involved with narcotic drugs on the day James Davis was killed and therefore does not have the ability to positively identify the person who shot James Davis.”
Requested charges 37 and 38 were substantially covered in the court’s oral charge on alibi evidence and were, for that reason, properly refused. Number 39 was correctly refused because it dealt with more than one distinct proposition, the first of which was covered in the court’s oral instructions to the jury.
“A request for instructions should not comprehend more than one subject or state more than one principle of law for the reason that if one principle is not due to be given the entire request may properly be refused. Gaston v. State, 359 So.2d 1170, 1171 (Ala.Cr.App.1978). Where a requested charge states several distinct propositions of law, the court may properly refuse it if some of them are fully covered in his oral instructions to the jury. See Burk v. State, 16 Ala.App. 110, 75 So. 702 (1917).”
Nolen v. State, 376 So.2d 1145, 1147 (Ala.Cr.App.), cert. denied, Ex parte Nolen, 376 So.2d 1148 (Ala.1979). See also Murry v. State 562 So.2d 1348 (Ala.Cr.App.1988).
Furthermore, all of these requested charges were properly refused, because they did not state that the theory of defense was based on evidence. Bell v. State, 473 So.2d 622, 624 (Ala.Cr.App.1985).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.